2016 IL App (1st) 121604

THIRD DIVISION
March 23, 2016

No. 1-12-1604

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 4475 |
| | ) | |
| MICHAEL NIETO, | ) | The Honorable |
| | ) | Rosemary Grant Higgins |
| Defendant-Appellant. | ) | Judge, Presiding. |

**OPINION**

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Mason and Justice Pucinski concurred in the judgment and opinion.

¶ 1     Defendant Michael Nieto appeals from the trial court's order summarily dismissing his

*pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West

2012)).  On appeal, defendant argues for the first time that his sentence is unconstitutional as

applied under the eighth amendment to the United States Constitution (U.S.  Const., amend.

VIII), and Illinois' proportionate penalties clause (Ill. Const. 1970, art. I, § 11). After considering

the complex state of case law following *Miller v. Alabama*, 567 U.S. ___,  132 S. Ct. 2455

(2012), including the United States Supreme Court's most recent pronouncement in *Montgomery*

*v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), we vacate defendant's sentence and remand

for resentencing. We affirm the judgment in all other respects.

¶ 2                              I. BACKGROUND

¶ 3                                A. Trial

¶ 4     The evidence presented at defendant's jury trial generally showed that on July 14, 2005, defendant, age 17, was riding in a black Ford Expedition with three other Latin Kings. While in a residential neighborhood, the young men encountered a red Jeep Cherokee whose occupants, victim Richard Soria and victim Israel Fernandez, allegedly used a sign disrespecting the Latin Kings. The Ford chased the Jeep. Ultimately, defendant, the front-seat passenger, shot at the Jeep, fatally shooting Soria in the head and injuring Fernandez.  Defendant subsequently told his brother-in-law that defendant had just "lit up some flakes" and that one victim received a "dome shot." The jury found defendant guilty of the first degree murder of Soria and the aggravated battery with a firearm of Fernandez. Additionally, the jury found that defendant personally discharged a firearm which proximately caused Soria's death.

¶ 5                              B. Sentencing

¶ 6     The presentence investigative report (PSI) stated, among other things, that defendant's highest level of education was the eighth grade. He was expelled from his freshman year of high school for fighting. In 2006, defendant failed the GED exam but planned to retake it and earn a business degree. Although defendant was unemployed, he had previously done some remodeling work and sold drugs to support himself.

¶ 7     According to the PSI, defendant stated that his father was in poor health, having been shot and stabbed at various times, and had been incarcerated for defendant's entire life. Defendant also stated that he was primarily raised by his maternal grandmother because his mother was a drug addict. For two years, defendant and his mother lived with her boyfriend. Her boyfriend, however, decided he did not want defendant to live with them. As a result, defendant

lived with his paternal grandfather in Texas, where he remained until 2002. At that time, defendant's mother summoned him back to Chicago due to his grandmother's poor health. Defendant received counseling after his grandmother's death and believed that he could benefit from further counseling but had not requested it because it was "too much trouble." Defendant subsequently lived with friends or on his own. Defendant also reported that his only friend happened to be a gang member with a criminal record. We note that defendant's brother-in-law testified that at the time of the offense, defendant occasionally lived with his family.

¶ 8    Defendant, who smoked marijuana daily, had committed armed robbery, attempted robbery and possession of cannabis as a minor. Tragically, he had pending charges of involuntary manslaughter and reckless discharge of a firearm for accidentally killing his younger brother, Elias Nieto, on December 24, 2005, after the present offense.

¶ 9    At sentencing, Detective Robert Girardi testified he learned that defendant possessed a gun which jammed and then discharged, accidentally shooting Elias. Defendant held Elias' hand on the way to the hospital and unsuccessfully tried to resuscitate him. Detective Girardi was informed that defendant had asked his mother to come to the police station, but she refused to see him. Following the detective's testimony, the State presented the victim impact statements of Soria's father, sister and brother-in-law. The State argued that defendant deserved the maximum sentence available, while defense counsel argued that even the aggregate minimum sentence of 51 years would ensure that defendant would not be released until he was almost 70 years old.

¶ 10    The trial court stated that it considered all of the evidence, arguments and defendant's offenses. In aggravation, the court found that defendant shouted gang slogans and used a firearm belonging to his gang to fire multiple times at unarmed victims, who were Satan Disciples. Additionally, no serious provocation was involved. Afterward, defendant told fellow gang

members that he "lit up some flakes." The court also found that defendant and his companions used police scanners to get information and avoid prosecution. The court further found that not only was defendant's criminal conduct likely to recur, but it did recur, given the shooting of Elias. The court also observed that defendant blamed Elias for defendant's own decision to tell the police that Satan's Disciples shot Elias, which potentially caused the police to pursue rival gang members. Nonetheless, the court recognized defendant's "considerable remorse for his brother's death and regret at what he considered to be an accidental shooting."

¶ 11    With respect to gang activity, the court considered deterrence:

"I do find that his ongoing criminal activity is an indication to this court that his gang, the Latin Kings, and the Satan Disciples as well, should know that this sentence is necessary to deter others from committing similar crimes. The use of gangs and gang violence for revenge, either on the Satan Disciples' part or on the Latin Kings' as a consequence of this action or Mr. Nieto's action."

The court also rejected defense counsel's suggestion that defendant lacked the opportunity to receive therapy. Instead, the court found the PSI showed he had the opportunity but decided it was too much trouble to take advantage of. The court further stated, "[h]is character and attitude as displayed over the course of his life does not indicate to me significant rehabilitative potential."

¶ 12    With that said, the court also stated as follows:

"I have taken into consideration your young age. I have taken into consideration the fact that everybody, no matter what crimes they commit, can do something to change their lives. You will have to do that something, Mr. Nieto, in the Illinois Department of Corrections. But you can do something. Perhaps you can work with the gangs there and

somehow rectify the wrongs you did when you committed the murder of Richard Soria, [the aggravated battery with a firearm of] Israel Fernandez, and inadvertently the death of your own brother.

You can change it by pointing out to those people who perhaps will be able to someday walk the streets and advise them and work with the programs in the Illinois Department of Corrections to change their lives. You can be a pivotal person in that change if you are willing to do that. I do believe that there is something good in you. I don't believe that on the streets you are capable of doing that good. I believe that the influence of the gangs and the strength and control they had over you in addition to your character did not permit you the opportunities that you will have in the Illinois Department of Corrections to help change somebody else's life and maybe save a life or two.

I believe that when you are shaking your head you are doing it in a positive way, and that you can do something positive for your mother, for your brother, and rectify his death and somehow make good on that."

The court sentenced defendant to 35 years in prison for first degree murder, 25 years for the personal discharge of a firearm, and 18 years for aggravated battery with a firearm, all to be served consecutively for a total of 78 years.

¶ 13    Defendant moved for the court to reconsider given that he was only 17 years old on the date of the offense and would be required to serve 75.3 years of his sentence after receiving sentencing credit. Defendant argued that his sentence did not adequately reflect his potential for rehabilitation and restoration to useful citizenship. Furthermore, defendant argued that recent

studies showed long prison sentences do not affect deterrence and that the court's statement regarding sending a message to gang members was against the prevailing academic view.

¶ 14    The court denied defendant's motion. Consequently, defendant will not complete his sentence until he is approximately 94 years old.[1]

¶ 15                                    C. Direct Appeal

¶ 16    We affirmed the judgment on direct appeal, rejecting among other things, defendant's assertion that his sentence was excessive. *People v. Nieto*, No. 1-09-0670 (2011) (unpublished order under to Supreme Court Rule 23(c)). Specifically, defendant argued that his 78-year sentence was the equivalent of a life sentence and negated the possibility of restoring him to useful citizenship. We stated, "[t]here is no dispute that this young man represents a rather tragic figure and that the arc of his life has been unredeemably sad." Nonetheless, we adhered to the legal presumption that the trial court considered all mitigating evidence, absent any contrary indication. We did not, however, question whether the trial court was able to discern what factors were aggravating and mitigating.

¶ 17                              D. Petition Under the Act

¶ 18    On February 21, 2012, defendant filed a *pro se* petition under the Act, raising several claims not at issue here. The trial court summarily dismissed defendant's petition on April 5, 2012, and defendant filed a timely notice of appeal. Subsequently, however, the United States Supreme Court held in *Miller*, 567 U.S. at ___, ___, ___, 132 S. Ct. at 2464, 2469, 2475, that the eighth amendment prohibits sentencing schemes that mandate the imposition of life sentences without parole on even juveniles who commit homicide. This decision followed two other landmark cases involving sentencing requirements for juvenile offenders. *Roper v. Simmons*, 543

---

[1] According to the Illinois Department of Corrections website, defendant's projected discharge date is May 13, 2084. See *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 66 (observing that this website is subject to judicial notice).

U.S. 551, 578 (2005) (holding that the eighth amendment prohibits a trial court from imposing the death penalty where an offender is under 18 years of age when the offense was committed); *Graham v. Florida*, 560 U.S. 48, 74 (2010) (prohibiting the imposition of a life sentence without parole on juveniles who did not commit homicide). On appeal, defendant asserts only that his sentence violates *Miller*.

¶ 19                                   II. ANALYSIS

¶ 20                                   A. The Act

¶ 21    The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. *People v. Tate*, 2012 IL 112214, ¶ 8. The Act's forfeiture rule, however, provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." (Internal quotation marks omitted.) *People v. Williams*, 2015 IL App (1st) 131359, ¶ 14 (quoting 725 ILCS 5/122-3 (West 2012)). This rule is more than a suggestion and appellate courts generally may not overlook forfeiture caused by a defendant's failure to include an issue in his petition. *Id.*

¶ 22    Defendant concedes that he did not raise this as-applied constitutional issue in his petition, which was filed prior to *Miller*, but argues that we may review this issue because an unconstitutional sentence can be challenged for the first time on appeal. The State disagrees. Resolving this dispute requires us to consider the Illinois and United States Supreme Court case law that has followed *Miller*.

¶ 23                              B. The Progeny of *Miller*

¶ 24                                   1. *Davis*

¶ 25    In *People v. Davis*, 2014 IL 115595, ¶ 9, the defendant asserted in a motion for leave to file a successive petition under the Act that his mandatory life sentence was unconstitutional, but the trial court denied leave. While his appeal was pending, the decision in *Miller* was issued. *Id.* ¶ 10. The appellate court determined that *Miller* applied and granted the defendant relief. *Id.*

¶ 26    Before the supreme court, the defendant argued he could challenge, in a collateral proceeding, the statutory scheme requiring him to be sentenced to natural life in prison for a crime committed as a juvenile because *Miller* rendered his sentence void. *Id.* ¶¶ 4, 24. Our supreme court found that while a statute is void *ab initio* where facially unconstitutional, the sentencing statute requiring the defendant to be sentenced to natural life in prison was not facially unconstitutional because it could be validly applied to adults. *Id.* ¶¶ 5, 25, 27, 30.

¶ 27    Nonetheless, the court concluded that the mandatory term of natural life without parole was unconstitutional as applied to this juvenile defendant. *Id.* ¶ 43. The court determined that *Miller* applied retroactively to the defendant's collateral proceeding because *Miller* created a new substantive rule. *Id.* ¶¶ 34, 38. Specifically, *Miller* placed a particular class of persons covered by the statute beyond the State's power to impose a particular category of punishment. *Id.* ¶ 39. We note that unlike the present case, the petition filed in *Davis* did challenge the defendant's sentence, albeit before *Miller* was issued.

¶ 28                                2. *Thompson*

¶ 29    In *People v. Thompson*, 2015 IL 118151, ¶¶ 6-7, the defendant was convicted of two counts of first degree murder, committed when he was 19 years old, and was sentenced to natural life in prison. In contrast to the defendant in *Davis*, defendant Thompson's petition, filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), did not challenge the constitutionality of his sentence (*Thompson*, 2015 IL 118151, ¶¶ 14-17). The

petition was dismissed on the State's motion and the defendant appealed, arguing for the first time that his sentence was unconstitutional as applied under *Miller*. *Id*. ¶ 18.

¶ 30     Before the supreme court, the defendant recognized that *Miller* expressly applied to minors under 18 years of age but argued that *Miller*'s policy concerns applied with equal force to a 19-year-old. *Id*. ¶ 21. Additionally, the defendant argued that because his as-applied constitutional challenge constituted a challenge to a void judgment, he could raise it at any time. *Id*. ¶ 30.

¶ 31     Our supreme court observed that judgments are void where jurisdiction is lacking or where a judgment is based on a facially unconstitutional statute, which is void *ab initio*. *Id*. ¶¶ 31-32. The defendant's as-applied challenge, however, fit within neither category. *Id*. ¶ 34. Additionally, the supreme court rejected the defendant's assertion that it was illogical to permit a defendant to raise facial constitutional challenges to a sentence at any time but not as-applied challenges. *Id*. ¶¶ 35-36. While a facial challenge requires demonstrating that a statute is unconstitutional under any set of facts, an as-applied challenge requires a showing that the statute is unconstitutional under the particular circumstances of the challenging party. *Id*. ¶ 36. Because as-applied challenges are dependent on the particular facts, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id*. ¶ 37. Based on this reasoning, the parties on appeal now dispute whether *Thompson* prohibits all as-applied constitutional challenges raised for the first time on appeal, or, whether a defendant may still raise an as-applied challenge for the first time on appeal where all facts necessary to review the defendant's claim appear in the record.

¶ 32     In any event, the supreme court found in *Thompson* the record contained neither information about how science on juvenile maturity and brain development applied to the

defendant's case, nor any factual development of whether *Miller*'s rational should be extended to minors over 18 years old. *Id.* ¶ 38. Accordingly, the court found the "defendant forfeited his as-applied challenge to his sentence under *Miller* by raising it for the first time on appeal." *Id.* ¶ 39.

¶ 33    Finally, the supreme court rejected the defendant's reliance on two appellate court cases: *People v. Luciano*, 2013 IL App (2d) 110792, and *People v. Morfin*, 2012 IL App (1st) 103568. Presumably, the defendant in *Thompson* relied on those cases because in each instance, the defendant obtained relief where raising *Miller* for the first time on appeal. See *People v. Thompson*, 2014 IL App (1st) 121729-U, ¶¶ 16, 18, 21.

¶ 34    In *Luciano*, the defendant, who committed murder at age 17, argued for the first time on appeal from the denial of his petition filed under the Act that his life sentence was unconstitutional as-applied under *Miller*. *Luciano*, 2013 IL App (2d) 110792, ¶¶ 41, 46. The reviewing court found, contrary to *Thompson*, that even an as-applied sentencing challenge could be raised at any time. *Id.* ¶¶ 41, 46-48. The court ultimately granted the defendant relief. *Id.* ¶ 89. Additionally, the reviewing court in *Morfin* determined that *Miller* applied retroactively, although apparently, the State did not argue forfeiture in that case. *Morfin*, 2012 IL App (1st) 103568, ¶¶ 11, 20, 56.

¶ 35    Despite that defendant Thompson relied on *Luciano* to support his contention that he could raise his as-applied challenge for the first time on appeal, as defendant Luciano did, our supreme court did not expressly find that *Luciano* was wrong in that regard. Instead, *Thompson* distinguished *Luciano*, and *Morfin*, on their merits: specifically, the defendants in those cases were minors whereas the defendant in *Thompson* was not. *Thompson*, 2015 IL 118151, ¶ 39. We further observe that while *Thompson* found the appellate court's holdings were consistent with *Davis*'s determination that *Miller* applies retroactively (*id.* ¶ 42), forfeiture appears to present a

distinct legal issue. See, *e.g.*, *People v. Reed,* 2014 IL App (1st) 122610, ¶ 94 (addressing forfeiture and retroactivity as separate issues).[2] When considered as a whole, *Thompson* implies that courts must overlook forfeiture and review juveniles' as-applied eighth amendment challenges under *Miller*, notwithstanding the general rule prohibiting as-applied challenges raised for the first time on appeal.

¶ 36                                3. *Montgomery*

¶ 37     More recently, the United States Supreme Court in *Montgomery* indicated that state courts must give *Miller* effect in collateral proceedings. The Court, like our supreme court in *Davis*, held that *Miller* announced a substantive rule, which courts must apply retroactively. *Montgomery*, 577 U.S.at ___, 136 S. Ct. at 727. Specifically, substantive rules set forth categorical constitutional guarantees that place certain laws and punishments beyond the State's power to impose. *Id*. at ___, 136 S. Ct. at 729. The Court found that while *Miller* did not bar punishment for all juvenile offenders, it did bar life without parole for all but the rarest juvenile offender and consequently, was substantive. Compare *Id*. at ___, 136 S. Ct. at 734, with *Miller*, 567 U.S. at ___, 132 S. Ct. at 2471 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime— as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain process— considering an offender's youth and attendant characteristics — before imposing a particular penalty."). Additionally, the Court found that *Miller*'s procedural component did not change the result, as substantive legal changes may, on occasion, be attended by a procedure permitting a prisoner to demonstrate that he falls within the

---

[2] Retroactivity may, as a practical matter, preclude a finding of forfeiture or waiver. See, *e.g.*, *In re Rolandis G.*, 232 Ill. 2d 13, 28-29 (2008) (no forfeiture on direct appeal when new rule announced after the appeal was filed); see also *People v. Stechly*, 225 Ill. 2d 246, 268 (2007) (same); *People v. Craighead*, 2015 IL App (5th) 140468, ¶ 17 (finding the defendant showed cause and prejudice with regard to the *Miller* claim raised in a successive petition under the Act because *Miller* applies retroactively).

category of persons no longer subject to punishment. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at ___.

¶ 38    Moreover, when a new substantive rule of constitutional law controls a case's outcome, state collateral review courts must give the rule retroactive effect. *Id*. at ___, 136 S. Ct. at 729. A court lacks authority to leave in place a conviction or sentence which violates a substantive rule, regardless of whether the judgment became final before the rule was announced. *Id*. at ___, 136 S. Ct. at 729. The Court further stated, "[i]f a State may not constitutionally insist that a prisoner remain in jail on federal habeas review, it may not constitutionally insist on the same result in its own postconviction proceedings." *Id*. at ___, 136 S. Ct. at 731.

¶ 39    Following *Davis* and *Montgomery*, *Miller* clearly applies retroactively to collateral proceedings. *Thompson* and *Montgomery* further suggest, however, that Illinois' procedural rules regarding forfeiture cannot be applied to juvenile defendants raising claims under *Miller*. But see *Kinkel v. Persson*, Nos. 13C13698, A155449, 6 n.6 (Or. Ct. App. Feb. 10, 2016) (finding that where the defendant raised an eighth amendment challenge on direct appeal, Oregon law prohibited him from seeking collateral relief under the subsequently rendered decision in *Miller* and concluding that *Montgomery* did not preclude operation of this state procedural bar). While *Montgomery* did not expressly discuss forfeiture, the Court found that state courts have no authority to leave intact a sentence that violates *Miller*. The Court placed no conditions on this constraint of a state court's power. Furthermore, this is consistent with *Thompson*'s implicit finding that juveniles can raise as-applied *Miller* challenges for the first time on appeal. Accordingly, we now determine whether defendant's sentence is unconstitutional under *Miller*.

¶ 40                                    C. Applying *Miller*

¶ 41                                    1. *De Facto* Life Sentences

¶ 42    The parties dispute whether multiple sentences can cumulatively constitute a life sentence under *Miller*. Compare *People v. House*, 2015 IL App (1st) 110580, ¶ 93 (observing that *de facto* life sentences do not permit courts to account for the differences between juveniles and adults), and *Gipson*, 2015 IL App (1st) 122451, ¶ 61 (finding that a juvenile defendant's sentences may cumulatively constitute natural life under the eighth amendment), with *People v. Pace*, 2015 IL App (1st) 110415, ¶ 131 (declining to follow *Gipson*'s determination regarding *de facto* life sentences). We adhere to our prior determination in *Gipson* that the concerns of *Miller* "are not satisfied by pretending that a cumulative sentence labeled as a term of years will in all cases be distinct from a sentence of natural life without the possibility of parole." *Gipson*, 2015 IL App (1st) 122451, ¶ 61. While we acknowledge that Illinois typically treats consecutive sentences as individual sentences and does not aggregate them for purposes of evaluating whether a sentence is excessive (*People v. Carney*, 196 Ill. 2d 518, 529 (2001)), we believe a different analytical framework is called for in the context of consecutive sentences imposed for crimes committed by a juvenile. Given that defendant will not be released from prison until he is 94 years old, we find that he effectively received a sentence of natural life without parole. Notwithstanding our determination, defendant's sentence was not mandatory.

¶ 43    Defendant's first degree murder conviction carried a sentencing range of 20 to 60 years. 730 ILCS 5/5-8-1(a)(1)(a) (West 2006). That conviction was also subject to a mandatory, consecutive firearm enhancement of 25 years. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2006). In addition, defendant's Class X aggravated battery conviction required a sentence of between 6 and 30 years in prison. 720 ILCS 5/12-4.2(a)(1), (b) (West 2006).  Furthermore, defendant was required to serve consecutive sentences. See 730 ILCS 5/5-8-4(a) (West 2006) (stating that "[t]he court shall impose consecutive sentences if *** one of the offenses for which defendant was

convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury"). While the trial court cumulatively sentenced defendant to 78 years in prison, the court could have sentenced defendant to only 51 years in prison.[3] Accordingly, defendant was not sentenced to life in prison without the possibility of parole due to a lack of discretion on the trial court's part. See *Miller*, 567 U.S. at ___, ___, ___, 132 S. Ct. at 2464, 2469, 2475.

¶ 44                                2. Mandatory vs. Discretionary

¶ 45     Prior to *Montgomery*, courts in this state understood *Miller* as prohibiting no more than mandatory life-sentences without parole for juveniles. *Davis*, 2014 IL 115595, ¶ 43; see also *People v. Edwards*, 2015 IL App (3d) 130190, ¶ 78 (Where the defendant's 90-year aggregate sentence was not the 76-year minimum available, the court found *Miller* granted the defendant no relief.). Indeed, the Court in *Miller* stated, "[w]e therefore hold that *mandatory* life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." (Emphasis added and internal quotation marks omitted.) *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. The language in *Montgomery*, however, strongly suggests that *Miller* does more. See also *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 743 (Scalia, J., dissenting, joined by Thomas and Alito, JJ.) ("It is plain as day that the majority is not applying *Miller*, but rewriting it."); *House*, 2015 IL App (1st) 110580, ¶ 92 (noting that legal scholars recognize the United States Supreme Court is moving toward the complete abolition of life without parole sentences for juveniles).

¶ 46     The Court stated in *Montgomery* that "*Miller* did bar life without parole *** for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility."

---

[3] Defendant does not contend that even the minimum cumulative sentence would have constituted a *de facto* life sentence. We also note that while defendant does not challenge the mandatory consecutive nature of his prison terms, this undoubtedly made his sentence more arduous.

*Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734. We note that the Court did not say *Miller* banned only the *mandatory* imposition of life without parole for all but the rarest of juveniles. But see *Davis*, 2014 IL 115595, ¶ 39 (finding that Miller constituted "a substantive change in the law that prohibits *mandatory* life-without-parole sentencing" (emphasis added and internal quotation marks omitted). "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity." (Internal quotation marks omitted.) *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469, quoting *Roper*, 543 U.S. at 573); see also *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 734 (Scalia, J., dissenting, joined by Thomas and Alito, JJ.) (observing that "even when the procedures that *Miller* demands are provided the constitutional requirement is not necessarily satisfied"). Consequently, *Montgomery* indicates that not even an exercise of discretion will preclude a *Miller* challenge.

¶ 47     *Montgomery* further states that the procedural requirement of *Miller*, requiring a sentencer to consider a juvenile's youth and attendant characteristics before imposing life without parole, merely "enables a prisoner to show that he falls within the category of persons whom the law may no longer punish." *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 735 (majority opinion). "[W]hen the Constitution prohibits a particular form of punishment for a class of persons, an affected prisoner receives a procedure through which he can show that he belongs to the protected class." *Id*. at ___, 136 S. Ct. at 735. After *Montgomery*, *Miller* requires that a juvenile be given an opportunity to demonstrate that he belongs to the large population of juveniles not subject to natural life in prison without parole, even where his life sentence resulted from the trial court's exercise of discretion.

¶ 48    We further note that shortly before *Montgomery* was issued, the United States Court of Appeals for the Seventh Circuit found, "[t]here is more to *Miller*" than its holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." (Internal quotation marks omitted.) *McKinley v. Butler*, 809 F. 3d 908, 910 (7th Cir. 2016). There, the court found the sentencing judge did not fully consider the defendant's youth and the concept that "children are different" before sentencing him to a discretionary, *de facto* life sentence of 100 years in prison. (Internal quotation marks omitted.) *Id*. at 911. Additionally, the court found the concept that sentencing courts must consider that children are different "cannot in logic depend on whether the legislature has made the life sentence discretionary or mandatory; even discretionary life sentences must be guided by consideration of age-relevant factors." *Id*.

¶ 49    Following *Montgomery*, we agree that there is more to *Miller*. Trial courts must consider a juvenile's special characteristics even when exercising discretion. See *People v. Holman*, 2016 IL App (5th) 100587-B, ¶ 41 ("*Miller*, however, requires not only that the sentencing court have the opportunity to consider these mitigating circumstances; it also requires that the court actually do so."). Where the record affirmatively shows that the trial court failed to comprehend and apply such factors in imposing a discretionary sentence of natural life without the possibility of parole, a juvenile defendant is entitled to relief. To be clear, we are not suggesting that the eighth amendment requires a trial court to expressly make findings regarding each factor discussed in *Miller*. See *Id*. ¶¶ 37-38. Nonetheless, a defendant is entitled to relief where the record affirmatively indicates that the trial court has deviated from the principles discussed therein.

¶ 50    In reaching this determination, we recognize that the Illinois Supreme Court and other courts of this state have interpreted *Miller* differently prior to *Montgomery*. Additionally, the

Illinois Supreme Court has not yet had the opportunity to address the impact of *Montgomery*.
Nonetheless, we are compelled to follow the United States Supreme Court's most recent
pronouncement on this matter.

¶ 51                             3. Defendant's Sentencing Hearing

¶ 52    Although the trial court exercised discretion in imposing defendant's sentence, the court's
reasoning did not comport with the juvenile sentencing factors recited in *Roper*, *Graham*, *Miller*
and *Montgomery*.

¶ 53    Life in prison without parole is disproportionate unless the juvenile defendant's crime
reflects irreparable corruption. *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 726. Sentencing
courts must consider a child's diminished culpability as well as his heightened capacity for
change. *Id*. at ___, 136 S. Ct. at 726. Children are immature, irresponsible, reckless, impulsive
and vulnerable to negative influence. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2464. Additionally,
they lack control over their environment and the ability to extricate themselves from crime-
producing circumstances. *Id*. at ___, 132 S. Ct. at 2464. Because a juvenile's character is not
well formed, his actions are less likely to demonstrate irretrievable depravity. *Id*. at ___, 132 S.
Ct. at 2464. It follows that youth diminishes penological justifications: (1) reduced
blameworthiness undermines retribution; (2) impetuosity undermines deterrence; and (3)
ordinary adolescent development undermines the need for incapacitation. *Id*. at ___, 132 S. Ct. at
2465. Additionally, life without parole entirely negates the possibility of rehabilitation.  *Id*. at
___, 132 S. Ct. at 2465.

¶ 54    Consequently, "*Miller* requires that before sentencing a juvenile to life without parole,
the sentencing judge take into account 'how children are different, and how those differences

17

counsel against irrevocably sentencing them to a lifetime in prison.' " *Montgomery,* 577 U.S. at ___, 136 S. Ct. at 733 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469).

¶ 55    While we do not fault the trial court for failing to apply principles of law and science that had not yet been adopted by the Court, the trial court's findings do not imply that it believed defendant was the *rarest* of juveniles whose crime showed that he was permanently incorrigible. The court clearly found that for the foreseeable future, defendant was likely to engage in further criminal conduct in light of the Latin Kings' influence over him and the tragic shooting of his brother. Given juveniles' susceptibility to peer pressure and recklessness, this is hardly surprising. Yet, susceptibility to peer pressure and recklessness erode with age. Indeed, the trial court found that in the future, defendant could change his life and even help other gang members change their ways. Although the court found defendant would have to do that in prison, contributing to the prison population differs from the opportunity to contribute to society. Additionally, the court found defendant's sentence was necessary to deter not only him, but other gang members. We now know, however, that defendant's sentence is not likely to deter anyone. See *Id*. at ___, 136 S. Ct. at 726 (observing that deterrence is diminished in juvenile sentencing because juveniles' recklessness, immaturity and impetuosity make them less likely to consider possible punishment).

¶ 56    As we recognized on direct appeal, the trial court expressly considered defendant's "young age." See also *Holman*, 2016 IL App (5th) 100587-B, ¶ 43 (observing that we presume the court considers mitigating evidence before it). With that said, the record shows that the court did not consider the corresponding characteristics of defendant's youth. In support of defendant's sentence, the State notes the aggravating factors found by the trial court, defendant's prior convictions, the unsatisfactory termination of probation, the death of his brother, his gang

violence, his pride in announcing that he "lit up some flakes" and "hit a dome shot," his use of police scanners and his decision to shoot unarmed victims. Yet, examining these factors through the lenses of *Miller* may have led to a shorter sentence. Accordingly, defendant is entitled to relief.

¶ 57    Relief following a first-stage dismissal under the Act ordinarily involves remand for second-stage proceedings. See, *e.g.*, *People v. Brown*, 236 Ill. 2d 175 (2010). The particular issue raised in this appeal, however, requires us to vacate defendant's sentence and remand for resentencing. See also *Davis*, 2014 IL 115595, ¶¶ 1, 43 (remanding for a new sentencing hearing on appeal from the denial of leave to file a successive petition). In light of our determination, we need not consider defendant's challenge under Illinois' proportionate penalties clause. Furthermore, as stated, defendant has abandoned all issues originally raised in his petition. Accordingly, we affirm the trial court's dismissal of those claims.

¶ 58                                    III. CONCLUSION

¶ 59    Following *Montgomery*, we vacate defendant's sentence and remand for resentencing. The judgment is affirmed in all other respects.

¶ 60    Affirmed in part and vacated in part; cause remanded with directions.