BARNES, J,
CONCURRING IN PART'AND DISSENTING IN PART:'
¶ 21. I concur with the majority’s findings on issues (2) and (4). Regarding Mason’s claim that he was actually or factually innocent of the kidnapping charge, I agree with the majority’s finding that the claim was without merit, but I write separately to highlight additional evidence supporting the factual basis for Mason’s guilty plea. For the charge of. kidnapping, the State would have to prove that Mason, “without lawful authority and with or without intent to secretly confine,” forcibly seized and confined Richmond “with intent to cause [him] to be confined or imprisoned against [his] will[.]” Miss. Code Ann. § 97-3-53 (Rev. 2014). Mason claims that “[a]t no time was Richmond held against his will[,J as he had no indication that Mason was a threat to him up to[,] and including[,] the,moment he was shot.” Mason notes his and Campbell’s statements that Richmond was just sitting, looking at his, computer, and Mason shot him without a word. Thus, Mason contends there was no factual basis for his kidnapping plea.
*136 ¶ 22. The Mississippi Supreme Court has held that “[a] factual basis for a plea maybe established by the admission of the defendant, but the admission must contain factual statements constituting a crime or be accompanied by independent evidence of guilt.” Hannah v. State, 943 So.2d 20, 26-27 (¶ 16) (Miss. 2006) (citing Reynolds v. State, 521 So.2d 914, 917 (Miss. 1988)). “[A] factual basis is not established by the mere fact that a defendant enters a plea of guilty.” Id, at 27 (citing Lott v. State, 597 So.2d 627, 628 (Miss. 1992)). “In the end[,] there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged [and] ‘that the defendant’s conduct was within the ambit of that defined as criminal.’ ” Corley v. State, 585 So.2d 765, 767 (Miss. 1991) (quoting United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)).
¶23. As noted by the majority, Mason agreed with the State’s proffer of evidence at the plea hearing “that [Mason] kidnapped [Richmond] by holding him at gunpoint by pointing a gun into the back of his head[.]” Moreover, the investigator testified at Mason’s bond hearing that the autopsy revealed Richmond died from a close-contact gunshot wound to the back of his head. This Court is “not limited to a review of a defendant’s plea transcript when determining if a factual basis existed for his guilty plea, but we may review the record as a whole for evidence of such.” Aucoin v. State, 17 So.3d 142, 146 (¶ 11) (Miss. Ct. App. 2009) (citing Boddie v. State, 875 So.2d 180, 183 (¶8) (Miss. 2004)). The nature of the wound, therefore, indicates that the weapon was held to Richmond’s head; thus, he may well have been aware of its presence and of his confinement. I find this “independent evidence of guilt,” coupled with Mason’s acknowledgment at the plea hearing that he held Richmond at gunpoint, sufficient to establish a factual basis for the kidnapping charge.
¶24. I respectfully dissent, however, from the majority’s analysis regarding the application of Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and its progeny, to the present case. The majority finds that because the statutes under which Mason was convicted provided the trial judge with discretion to impose any sentence between two and fifty years, Miller is not applicable. Based on the caselaw evolving from Miller, I do not believe we can so readily dismiss Mason’s argument based on the discretionary nature of his sentences. Additionally, there is authority from other jurisdictions supporting Mason’s claim that aggregate sentences may constitute a “de facto” life sentence and warrant the consideration of the Miller■ factors. I would reverse and remand to the circuit court for an eviden-tiary hearing on the merits of Mason’s claim on this issue.

A. Mandatory v. Discretionary

¶ 25. Were we deciding this case at the time it was reviewed by the trial court on March 12, 2015, I would agree that “mandatory” means “mandatory” and that this Court should affirm the circuit court’s denial of Mason’s PCR motion. The express language in Miller clearly indicated that its holding applied only to mandatory sentencing schemes.
Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from ■which he cannot usually extricate himself—no matter how brutal or dysfunctional .... [T]his mandatory punishment *137 disregards the possibility of rehabilitation even when the circumstances most suggest it.. We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.
Miller, 132 S.Ct. at 2467-69 (emphasis added). Furthermore, the Mississippi Supreme Court has thus far only applied Millers holding to juvenile offenders sentenced to mandatory life sentences. See Parker v. State, 119 So.3d 987, 999-1000 (¶¶ 28-29) (Miss. 2013) (vacating the fifteen-year-old defendant’s mandatory sentence of life without parole and remanding for the sentencing court to consider the protections discussed in Miller)-, see also Jones v. State, 122 So.3d 698, 702 (¶ 10) (Miss. 2013) (vacating Brett Jones’s sentence of mandatory life imprisonment and remanding for resentencing).
¶26. However, the matter is not that simple. A split of authority arose as. to whether the Miller protections apply to a discretionary sentencing scheme. In United States v. Walton, 537. Fed.Appx. 430, 437 (5th Cir. 2013), the United States Court of Appeals for the Fifth Circuit held that neither Graham nor Miller “applies] to [the petitioner’s] discretionary federal sentence for a term of years, [and b]ecause [he] attempts to raise novel constitutional arguments that would require the extension of precedent, he fails to demonstrate plain error.” See also Foster v. State, 294 Ga. 383, 754 S.E.2d 33, 37 (¶ 11) (2014) (holding that because the sentencing court had discretion in sentencing the juvenile offender, his sentence of life without parole was not “cruel and unusual punishment” under Miller)-, Arredondo v. State, 406 S.W.3d 300, 306 (Tex. App. 2013) (finding that the Miller Court “did not hold that discretionary life without parole sentences violate the Eighth Amendment”).
¶27. However, other jurisdictions extended Miller’s holding to cases where the trial court had discretion in sentencing the juvenile defendant. In State v. Riley, 315 Conn. 637, 110 A.3d 1205, 1213-14 (2015), the Connecticut Supreme Court concluded:
[T]he dictates set forth in Miller may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole if it fails to give due weight to evidence that Miller deemed constitutionally significant before determining that such a severe punishment is appropriate.... Miller and ■ Graham analogized the harshness of a life sentence without pa-rolé for a juvenile to the death penalty. This penalty is no less harsh if imposed pursuant to an exercise of discretion.
(Citations omitted); see also Casiano v. Com. of Correction, 317 Conn. 52, 115 A.3d 1031, 1044 (2015) (holding the discretionary “imposition of a fifty[-]year sentence without possibility for parole [for a juvenile] is subject to the sentencing procedures set forth in Miller”). In McKinley v. Butler, 809 F.3d 908, 911 (7th Cir. 2016), the United States Court of Appeals for the Seventh Circuit interpreted Miller to include both discretionary and mandatory life sentences. “The relevance to sentencing of ‘children are different’ also cannot in logic depend on whether the legislature has made the life sentence discretionary or mandatory; even discretionary life sentences must be guided by consideration of age-relevant factors.” Id. (quoting Miller, 132 S.Ct. at 2469).
¶28. Then, in Montgomery v. Louisiana, — U.S. -, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the Supreme Court indicated that Miller not only forbids man-datorily imposed sentences of life" without parole, but those sentences that do not take into account the “distinctive attributes of youth,” stating:
*138 Miller ... did more than require a sen-teneer to consider a juvenile offender’s youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of “the distinctive attributes of youth.” Even if a court considers a child’s age before sentencing him or her to a lifetime in prison■, that sentence still violates the Eighth Amendment for a child whose crime reflects “unfortunate yet transient immaturity,” ..Because Miller, determined that, sentencing a child to life without parole is excessive for all but “the rare juvenile offender whose crime reflects irreparable corruption,” it . rendered life without parole an unconstitutional penalty for “a class of defendants because of their status”— that is, juvenile offenders whose crimes reflect the transient immaturity of youth.
Montgomery, 136 S.Qt. at 734-36 (emphasis added and internal citations omitted). Justice Scalia dissented, stating that the majority “rewr[ote] Miller.” Id. at. 743 (Scalia, J., dissenting).
¶ 29. While the State maintains that Miller only applies to mandatory, sentencing schemes, and that Montgomery “in no way alters the Miller holding,” Mason contends that, in light of Montgomery, Miller “is applicable to a juvenile defendant’s sentence of life without parole imposed under a discretionary sentencing scheme[.]”[7] Recent cases indicate support for Mason’s argument, although a few courts reject the argument that Miller is applicable to a discretionarity imposed sentence. In State v. Terrell, No. 103428, 2016 WL 3442917, at **4-5 (Ohio Ct. App. June 23, 2016), the appellate court concluded that Montgomery “was discussing the imposition of mandatory life sentences idthout parole”-, thus, “Montgomery did not expand the (Ojourt’s holding- in Miller.” (Emphasis in original), A recent case, Jones v. Commonwealth, 293 Va. 29, 795 S.E.2d 705 (2017), provides an excellent debate of Montgomery’s effect on Miller,[8] The Jones majority averred that Miller and Montgomery “addressed mandatory life sentences without possibility of parole.” Id. at 721.
We acknowledge that, perhaps, some post-Montgomery opinion from the United States Supreme Court might expand the Eighth Amendment to “mandatory or discretionary” juvenile life sentences generally, ... with the evident purpose of moving the bar so high that all life sentences for convicted juvenile murderers and rapists, or juveniles convicted of other similarly serious crimes, eventually will be judicially deemed cruel and unusual punishment as a matter of law. The question before us, however, is what the law is now, not what it may be in the future. We are not in the speculative business of plotting' the future course of federal precedents.
Id. (citations and quotations omitted). The dissent in Jones, however, adopted an expanded analysis of Montgomery, stating:
Montgomery made it clear that the focus of Miller was not that only mandatory life sentences are unconstitutional; rather, it is that the Eighth Amendment requires individualized consideration before a juvenile can be sentenced to life in prison without the possibility of pa *139 role.... [W]hen viewed through the lens of Montgomery, it is clear that Miller ⅛ discussion of mandatory life sentences was not meant to limit application of the opinion to that instance, but rather to demonstrate how mandatory sentencing schemes foreclose the necessary individualized consideration.
Id, at 724.
¶30. Other jurisdictions have determined that Montgomery stands for the proposition that Miller protections should also be afforded to a defendant whose life sentence was imposed ünder a discretionary sentencing scheme. In People v. Nieto, 402 Ill.Dec. 521, 52 N.E.3d 442, 454 (¶49) (Ill. App. Ct. 2016), the Appellate Court of Illinois concluded:
Following Montgomery, we agree that there is more to Miller. Trial courts must consider a juvenile’s special characteristics even when exercising discretion. Where the record affirmatively shows that the trial court failed to comprehend and apply such factors in imposing a discretionary sentence of natural life without the possibility of parole, a juvenile defendant is entitled to relief.
In Landrum v. State, 192 So.3d 459, 467 (Fla. 2016), the Florida Supreme Court determined that the Montgomery Court “clarified that the Miller Court had no intention of limiting its rule of requiring individualized sentencing for juvenile offenders only to mandatorily-imposed sentences of life without parole, when a sentencing court’s exercise of discretion was not informed by MillePs considerations.” (Citing Montgomery, 136 S.Ct. at 735).
[A]t the heart of Miller, as further amplified in Montgomery, is the Eighth Amendment’s prohibition of imposing certain punishments on juvenile offenders that fail to consider a juvenile’s “lessened culpability and greater capacity for change.” Horsley [v. State], 160 So.3d [393,] 396 [(Fla. 2015)] (citing Miller, 132 S.Ct. at 2460) (internal quotations omitted). Therefore, the exercise of a sentencing court’s discretion when sentencing juvenile offenders must be informed by consideration of the juvenile offender’s “youth and its attendant circumstances” as articulated in Miller .... Without this individualized sentencing consideration, a sentencer is unable to distinguish between juvenile offenders whose crimes “reflect transient immaturity” and those whose crimes reflect “irreparable corruption.” Miller, 132 S.Ct. at 2469. Failing to make this distinction, otherwise, would mean life sentences for juveniles would not be exceedingly‘rare, but possibly commonplace.
Landrum, 192 So.3d at 467; see also United States v. Johnson, No. 3:08-CR-00010, 2016 WL 3653753, at *2 (W.D. Va. June 28, 2016) (“[A] particular life sentence (even one stemming from a sentencing regimé that permits a non-life sentence) would be unconstitutional as-applied if. the sentencer did not abide by the commands of Miller and Montgomery.”). In State v. Scott, 196 Wash.App. 961, 385 P.3d 783, 787 (¶ 20) (2016), the Court of Appeals of Washington rejected the State’s argument that Miller “was immaterial because [the petitioner’s] sentence was not the result of a mandatory sentencing scheme,” holding: “Montgomery clearly indicates that life without parole is unconstitutional for most juveniles, whether imposed under a mandatory or a discretionary sentencing scheme.”
¶31,. After due consideration, I agree with the courts’ analysis in Johnson, Landrum, Scott, and Nieto. I see no constitutional reason why .a juvenile with the mandated sentence of life without parole should receive a MiMer hearing, while a juvenile with the discretionary life sentence should not if the juvenile is incarcerated for life without ,-his “youth and at *140 tendant characteristics” Reing taken into account. The majority submits that it should not be assumed the circuit court failed to consider Mason’s age in sentencing, noting Roper’s comments that “any parent knows... [the] lack of maturity and .'.. underdeveloped sense of responsibility ... found in youth.” See Roper v. Simmons, 543 U.S. 551, 569, 125 S.Ct. 1188, 161 L.Ed.2d 1 (2005). Seven years after Roper, however, the Miller Court outlined specific factors for courts to consider when sentencing a juvenile—the offender’s “immaturity, impetuosity, and failure to appreciate risks and consequences”; the offender’s “family and home environment”; “the circumstances of the homicide offense, including the extent of [his] participation in the conduct and the way familial and peer pressures may have affected him”; his “inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys”; and “the possibility of rehabilitation^]”[9] Consequently, as the Supreme Court observed in Montgomery, “Miller ... did more than require a sentencer to consider a juvenile offender’s youth before imposing life without parole .... Even if a court considers a child’s age before sentencing' him or her to a lifetime in prison, that' sentence still violates the Eighth Amendment for a child whose crime reflects ‘unfortunate yet transient immaturity.’” Montgomery, 136 S.Ct. at 734. As the circuit court’s sentencing in this case was not informed by Miller and Montgomery, I find this Court cannot just assume the circuit court considered Mason’s age in sentencing, much less his “youth and its attendant characteristics, along with the nature of his crime.” The judge simply accepted the State’s ' recommendation and sentenced Mason to the maximum sentences allowed by law.
¶ 32. The next issue that must be addressed is whether a lengthy term of incarceration may constitute a “de facto” life sentence in the context of the sentencing of a juvenile defendant.
B. Whether Miller and Montgomery are also applicable to a lengthy term of years that constitutes a “de facto ” life sentence.
¶33. Mason argues that “the Miller principles should apply even when the trial court imposes lengthy term sentences as well as aggregate or consecutively-imposed sentences.” A number of cases since Miller support his argument. In Bear Cloud v. State, 334 P.3d 132, 141-42 (¶33) (Wyo. 2014), the Wyoming Supreme Court determined that the holdings of Roper, Graham, and Miller require a sentencing court to weigh the Miller factors “when, as here, the aggregate sentences result in the functional equivalent of life without parole.”
To do otherwise would be to ignore the reality that lengthy aggregate sentences have the effect of mandating that a juvenile “die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate.” Miller, 132 S.Ct. at 2460. Such a lengthy sentence “means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the juvenile convict, he will remain in prison for the rest of his days.” Graham [v. Florida], 560 U.S. [48] at 70 [130 S.Ct. *141 2011, 176 L.Ed.2d 825 (2010) ]. That is exactly the result that Miller held was unconstitutional. Miller, 132 S.Ct. at 2460.
Id. at 142 (¶ 33). The Iowa Supreme Court, in State v. Null, 836 N.W.2d 41, 72 (Iowa 2013), concluded:
Miller ’s principles are fully applicable to a lengthy term-of-years sentence^] as was imposed in this case[,] because an offender sentenced to a lengthy term-of-years sentence should not be.worse off than an offender sentenced to life in prison without parole who has the benefit of an individualized hearing under Miller.
Sixteen-year-old Denem Null was “required to serve at least 52.5 years of [his] seventy-five-year aggregate sentence for second-degree murder and first-degree robbery.” Id. at 45. Null’s argument.was that this was a “de facto life sentence, ... citfing] a National Vital Statistics Report indicating the life expectancy of a twenty-year-old black male is 51.7 years,” Id. at 50-51. Discussing this issue in the context of the “cruel and unusual punishment provision” of the Iowa Constitution, article I, section 17, the Iowa Supreme Court , concluded that the provision “requires that a district court recognize and apply the core teachings of Roper, Graham, and Miller in making sentencing decisions for long prison terms involving juveniles.” Id. at 51, 74. The Null court further noted that long-term incarceration may present “health and safety risks- that tend to decrease life expectancy as compared to the general population.” Id. at 71. Determining that “such a lengthy sentence imposed on a juvenile is sufficient to trigger Miller-type protections,” Null’s sentences were vacated and remanded for resentencing. Id. at 45, 71.
¶ 34. In Casiano, 115 A.3d at 1045, the Connecticut Supreme' Court rejected the idea “that, in- order for a sentence to be deemed ‘life imprisonment,’ it must continue until the literal end of one’s life.” Sixteen-year-old Jason Casiano pleaded guilty to felony murder and two counts of armed robbery and was sentenced under a plea agreement to “a total effective prison terrrl of fifty years” without parole.[10] Id. at 1033. The Casiano court concluded that “the imposition of a fifty-year sentence without the possibility of parole is subject to the sentencing procedures set forth in Miller.” Id. at 1044.
[A] fifty[-]year term and its grim prospects for any future outside of prison effectively provide a juvenile offender with “no chance for-.fulfillment outside prison walls, no chance for reconciliation with society, no hope.” [Graham, 560 U.S.] at 79, 130 S.Ct. 2011. . Thus, we agree with the Iowa Supreme Court [in Null ] that “even if lesser sentences than life without parole might be less problematic, we do not regard the juvenile’s potential future release in his or her. late sixties after a half century of incarceration sufficient to escape the rationales of Graham or Miller.” Null, supra, 836 N.W.2d at 71[.]
Id. at 1047. But see State v. Logan, 160 Conn.App. 282, 125 A.3d 581, 589 (2015) (concluding a seventeen-year-old’s thirty-one-year sentence “d[id] not approach what the ■ Supreme Court described in Roper, Graham, and' Miller,” and noting those cases “cannot be read to mean that all mandatory deprivations of liberty are of potentially constitutional magnitude”). Thus, these cases stand for the proposition *142 that Miller protections’ may apply to lengthy aggregate sentences.
¶ 35. The State asserts “with confidence that Mason is not serving a de facto life sentence”[11] and “there is no controlling authority to guide the • determination of what would constitute a de facto life sentence for Miller purposes.” Citing McCoy v. State, 147 So.3d 333, 342 (¶20) (Miss. 2014), the State claims that whether - a defendant’s- “sentences were ordered to run consecutively does not change the analysis, as... each sentence is to be imposed without respect to the other.” I find McCoy distinguishable from the present, case as it does not concern a juvenile defendant. Moreover, the trial court in McCoy “reviewed mortality tables to determine that [James] McCoy’s life expectancy; was 40.06 years” and accordingly sentenced him to thirty-five years in custody; Id. I find the Illinois appellate court’s analysis in Nieto instructive:
[T]he concerns of Miller “are not satisfied- by pretending that a cumulative sentence labeled as a term of years will in all cases- be distinct' from a sentence of natural life without the possibility of parole.” [People v.] Gipson, 393 Ill.Dec. 359, 34 N.E.3d 560[, 577 (Ill. App. Ct. 2015) ]. While we 'acknowledge that Illinois typically treats consecutive sentences as individual sentences and does not aggregate them for purposes-of evaluating whether a sentence is excessive (People v. Carney, 196 Ill.2d 518, 256 Ill.Dec. 895, 752 N.E.2d 1137 (2001)), we believe a different analytical framework is called for in the context of consecutive sentences imposed for crimes committed by a juvenile. Given that defendant will not be released from prison until he is 94 years old, we find that he effectively received a sentence of natural life without parole.[12]
Nieto, 402 Ill.Dec. 521, 52 N.E.3d at 452 (¶ 42) (emphasis added); see also State v. Ronquillo, 190 Wash.App. 765, 361 P.3d 779, 785 (¶¶ 22-23) (2015) (concluding a siiteen-year-old defendant’s aggregate sentences of 51.3 years were the “functional equivalent of a life sentence” and subject to Miller protections, even though the separate sentences involved “four different victims”); Null, 836 N.W.2d at 71 (noting the Miller court “offered no indication” a defendant’s convictions for multiple crimes “affected the analysis” and concluding that “the imposition of an aggregate sentence does not remove the case from the ambit of Miller ⅛ principles”).
¶36. Fifteen-year-old Mason was convicted in 2008, several years before the Supreme Court’s ■ holdings in Miller and Montgomery. Thus, the sentencing court “did not-have the benefit of th[e Supreme] Court’s guidance regarding the ‘diminished culpability of juveniles’ and the ways that ‘penological justifications’ apply to juveniles with ‘lesser force than to adults.’” See Adams v. Alabamai — U.S. -, 136 S.Ct. 1796, 1800, 195 L.Ed.2d 251 (2016) *143 (quoting Roper, 543 U.S. at 571, 125 S.Ct. 1183) (Sotomayor; J., concurring in decision to grant, vacate, and remand). Had Mason gone to trial and been convicted of murder, which carries a mandatory sentence of life in prison, we would be bound by precedent to vacate his sentence and remand to the sentencing court for consideration of the Miller factors. I can find no constitutional justification for denying that same hearing to Mason because he pled guilty to lesser charges that resulted in aggregate sentences of fifty years without eligibility for parole. As the Supreme Court of New Jersey recently stated in State v. Zuber, 227 N.J. 422, 152 A.3d 197, 211 (2017):
Will a juvenile be imprisoned for life, or will he have a chance at release? It does not matter to the juvenile whether he faces, formal “life without parole” or multiple term-of-years sentences that,.in all likelihood, will keep him in jail for the rest of his life. We believe it does not matter for purposes of the Federal or State Constitution either.
Although the State argues that “[t]here is simply no evidence before the Court to suggest that a [thirty-jyear sentence, or [twenty-jyear sentence exceeds Mason’s life expectancy,” it is the fifty-year sentence imposed in this instance that this Court must consider, and I am not as “confiden[t]” as the State that Mason is not serving a “de facto life sentence,” especially in light of the fact that Mason is a black male who has been in the custody of the MDOC since he was fifteen years old and'will remain in custody at least untii his late fifties.[13] I also disagree with the majority’s conclusion that Mason has “all but concedetdj” that he is not serving a life sentence based on Mason’s acknowledgment that he has a tentative release date of 2050, when Mason would be fifty-seven years old. Mason expressly argues in his supplemental brief that “[f]ifty years is a lengthy term sentence, which effectively resembles or is the functional equivalent of a life sentence.” Additionally, I note the MDOC’s time sheet is not in the Court’s official records. Although the majority contends Mason should have offered evidence “such as. life expectancy tables” to support his claim, “[t]he purpose of an. evidentiary hearing is for the court to receive evidence in order to make findings of fact,” Rowland v. Britt, 867 So.2d 260, 262 (¶ 9) (Miss. Ct. App. 2003) (citing Lyle v. State, 756 So.2d 1 (¶7) (Miss. Ct. App, 1999)). As previously discussed, cases such as Ron-quillo and Casiano, which have determined that a discretionary sentence totaling fifty years, is sufficient to raise Miller concerns. I believe the issue is properly deserving of an evidentiary hearing,
¶37. Regarding the .State’s argument that because Mason was eligible for trusty/ earned time and not serving his entire fifty-year sentence, he is not subject to a “de facto, life sentence,” we note that in Parker, 119 So.3d at 997 (¶ 23), the Mississippi Supreme Court soundly “reject[ed]” the State’s argument that since Parker would be eligible for conditional release from his sentence of life without parole when he reaches sixty-five, “he [would] not [be] mandate[d] to spend the rest of his life in prison,” and this “conditional release satisfies the Miller mandate,”
Conditional release is more akin to clemency, which the Supreme Court has held “as a matter of law” to be different from parole “despite some surface similarities.” Solem v. Helm, 463 U.S. 277, 300, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *144 Additionally, a conditional release would not be determined by the sentencing authority at the time of sentencing based on age and other characteristics, as Miller mandates.
Parker, 119 So.3d at 997 (¶ 23). Likewise, whether Mason is to be released early due to any earned/trusty time is determined by the MDOC; it is not determined by the trial court at the time of sentencing.
¶ 38. Accordingly, I would reverse the circuit court’s denial of Mason’s PCR motion and remand to the circuit court for an evidentiary hearing as to whether Mason’s aggregate fifty-year sentence constitutes a “de facto” life sentence that affords him consideration of the factors discussed in Miller. This will provide Mason, and the State, an opportunity to offer additional evidence (e.g., mortality tables, prior school records, etc.) regarding Mason’s life expectancy at the time he was sentenced. If the circuit court finds that Mason’s sentences are subject to the Miller protections, it may, after consideration of the factors, still uphold Mason’s sentences as a “rare” or “uncommon” case. Or it may determine he will be eligible for parole consideration notwithstanding the current provisions of Mississippi Code Annotated section 47—7—3(l)(f) (Supp. 2016), which prohibit parole for those crimes for which Mason has been convicted. See Parker, 119 So.3d at 999 (¶28).[14]
IRVING, P.J., AND WESTBROOKS, J., JOIN THIS OPINION.

. Because this was an issue of first impression for our Courts, and the parties’ briefs were filed before the Supreme Court’s holding in Montgomery, we had the parties submit supplemental briefing on this issue.

. The Virginia Supreme Court was considering Jones’s claim on remand from the United States Supreme Court's grant of a petition of certiorari for reconsideration in light of Montgomery. See Jones v, Virginia, — U.S. -, 136 S.Ct. 1358, 194 L.Ed.2d 340 (2016).

. See Milter, 132 S.Ct. at 2468.

. Casiano received a fifty-year sentence for the murder charge, along with separate twenty-year sentences for the armed robbery counts, which were to run concurrent to the murder sentence. ,

. The State argues Mason is not subject to a "de facto” life sentence as he is eligible for trusty time earned, and eligible for early release “within his lifetime,” It attached an MDOC time sheet to the supplemental brief, acknowledging that the document was outside the record on appeal, to support its argument that Mason is eligible for a reduction in his sentence, The time sheet reflects that Mason has earned over seven years in total trusty time. But it also indicates that Mason was taken "Out of Trusty Status” on August 16, 2016, and his tentative release date is Novemr ber 25, 2050. Mason would be fifty-seven years old. Although we may not consider matters outside the record on appeal, we' will address this argument in more detail below. See Hampton v. State, 148 So.3d 992, 995 (¶ 7) (Miss. 2014).

. Michael Nieto was sentenced to a discretionary aggregate term of seventy-eight years.

. This is assuming, for the sake of argument only, that the State’s off-the-record MDOC tíme sheet is accurate.

. The Montgomery Court reasoned that Miller’s retroactive effect “does not require States to relitigate sentences”; rather the State "may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentenc-ing them.” Montgomery, 136 S.Ct. at 736. "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.” Id.