2015 IL App (1st) 131359

SIXTH DIVISION
September 25, 2015

No. 1-13-1359

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 10786 |
| | ) | |
| SANDY WILLIAMS, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE DELORT delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment and opinion.

## OPINION

¶ 1     This case is a postconviction sequel to a case heard on direct appeal, and on the merits, not merely by this court, but also by the Illinois Supreme Court and the United States Supreme Court.  Defendant Sandy Williams claims that if he had been represented by better lawyers, it is arguable that United States Supreme Court Justice Clarence Thomas would have changed his deciding vote and invalidated crucial evidence introduced at Williams's trial.  Williams filed a postconviction petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)).  The circuit court dismissed the petition, and we affirm.

¶ 2    The State charged defendant with two counts of aggravated criminal sexual assault, and one count each of aggravated kidnapping and aggravated robbery.  At trial, the State elicited evidence that on February 10, 2000, defendant abducted a woman who was walking home from work.  Defendant forced the victim into his car, sexually assaulted her, robbed her of both money and other belongings, and then pushed her out of the car and into the street.  The victim ran home, told her mother what happened and the mother called the police.  An ambulance arrived and transported the victim to the hospital where she provided a blood sample and a vaginal swab for a sexual assault kit.  The kit was sent to the Illinois State Police crime lab for testing as well as to Cellmark Diagnostics Laboratory (Cellmark) in Germantown, Maryland, for additional testing.

¶ 3    On August 3, 2000, defendant was arrested on an unrelated offense.  While in custody, he was required to provide a blood sample for a police database.  When defendant's blood sample was tested and analyzed, his DNA matched the DNA of the unidentified suspect in the sexual assault.  The victim viewed a lineup in which defendant participated, and she identified him as her attacker.  Multiple forensic scientists from the Illinois State Police crime lab testified during trial concerning the testing, analysis and matching of the forensic evidence.  In particular, forensic scientist Sandra Lambatos testified as an expert witness in forensic biology and forensic DNA analysis.  She stated a match was made between the DNA profile of the assailant in the sexual assault produced by Cellmark with the DNA profile of defendant from his blood sample.  While she admitted to not personally observing the testing at Cellmark, she did acknowledge that Cellmark was an accredited laboratory.  The Cellmark report was not introduced into evidence, and Lambatos only referenced the report as background for forming her opinion that the DNA profiles matched.

¶ 4 Defendant's trial counsel moved to strike the portion of Lambatos's testimony concerning Cellmark's testing based on a violation of defendant's sixth amendment right to confrontation. The court denied defendant's motion and ultimately found him guilty on all counts. The court sentenced him to two concurrent terms of natural life in prison for the aggravated criminal sexual assaults, a consecutive term of 60 years in prison for aggravated kidnapping and a concurrent term of 15 years in prison for aggravated robbery.

¶ 5 Defendant appealed his conviction, contending, *inter alia*, that the report from Cellmark that Lambatos referenced in her testimony and used in her analysis was testimonial. Accordingly, he claimed that his right to confrontation was violated when no employee from Cellmark testified at his trial. In *People v. Williams*, 385 Ill. App. 3d 359 (2008), this court, with one justice dissenting, affirmed defendant's convictions and held that "the report was not introduced to prove the truth of Cellmark's results" and "consequently the Confrontation Clause was not violated." *Id.* at 370.

¶ 6 The Illinois Supreme Court subsequently granted defendant's petition for leave to appeal. In *People v. Williams*, 238 Ill. 2d 125 (2010), our supreme court affirmed the lower courts' findings that Lambatos's reference to the Cellmark report did not violate defendant's right to confrontation because "the State did not offer Lambatos' testimony regarding the Cellmark report for the truth of the matter asserted and this testimony did not constitute 'hearsay.' " *Id.* at 150.

¶ 7 The United States Supreme Court subsequently granted *certiorari*. In *Williams v. Illinois*, 567 U.S. ___, 132 S. Ct. 2221 (2012), a plurality of justices (Chief Justice Roberts, and Justices Alito, Breyer and Kennedy) held that the Cellmark report was not offered for the truth of the matter asserted, but rather for the sole purpose of "explaining the assumptions on which that

[expert] opinion rests." *Id.* at ___, 132 S. Ct. at 2228 (plurality op.). Consequently, defendant's right to confrontation was not violated. *Id.* at ___, 132 S. Ct. at 2228. The plurality held, alternatively, that even if the Cellmark report had been admitted into evidence, it still would not have violated defendant's right to confrontation because the "report was sought not for the purpose of obtaining evidence to be used against" defendant, but rather to find an unidentified criminal on the loose. *Id.* at ___, 132 S. Ct. at 2228.

¶ 8     Justice Thomas agreed with the plurality that the Cellmark report did not violate defendant's right to confrontation, but disagreed with its reasoning. *Id.* at ___, 132 S. Ct. at 2255 (Thomas, J., concurring). He concluded that the report did not violate defendant's right to confrontation "solely" because the report "lacked the requisite formality and solemnity to be considered testimonial for purposes of the Confrontation Clause." (Internal quotation marks omitted.) *Id.* at ___, 132 S. Ct. at 2255.

¶ 9     Justice Kagan dissented, stating the report "was made to establish some fact in a criminal proceeding" and "identical *** in all material respects" to other forensic reports the Court had already decided were testimonial. (Internal quotation marks omitted.) *Id.* at ___, 132 S. Ct. at 2266 (Kagan, J., dissenting, joined by Scalia, Ginsburg, and Sotomayor, JJ.) (citing *Bullcoming v. New Mexico*, 564 U.S. ___, ___, 131 S. Ct. 2705, 2717 (2011), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009)).

¶ 10     Defendant then filed a *pro se* postconviction petition, which is the subject of this appeal. The petition first alleged that his "trial counsel" was ineffective for failing to "question the State's expert witness concerning the partial forensic DNA profile that was completed by a [*sic*] outsourced laboratory." Second, his petition alleged that his "trial counsel" was also ineffective "for not raising the constitutional violation argument that the authors (experts) of the report's

[*sic*] effectively certified the report by signing it, thus violating the confrontation clause." The petition concluded by stating that if the report had been deemed certified, Justice Thomas of the United States Supreme Court would have ruled in his favor. Finally, his petition requested additional forensic testing.

¶ 11    Defendant attached three documents to the petition to support his second claim: (1) Rule 11.1.2 of the FBI Quality Assurance Standards for Forensic DNA Testing Laboratories (the FBI Standards), which required "[a] signature and title, or equivalent identification, of the person(s) accepting responsibility for the content of the report;" (2) a 2008 manual from the Crime Laboratory Accreditation Program of the American Society of Crime Laboratory Directors/Laboratory Accreditation Board (ASCLD/LAB), which stated that laboratories accredited with ASCLD/LAB in the "Biology subdiscipline of DNA will be inspected under * * * the applicable standards of the FBI's Quality Assurance Standards for Forensic DNA Testing Laboratories;" and (3) a transcript containing testimony from Dr. Robyn Cotton, a former manager of research and laboratory director at Cellmark, from a proceeding unrelated to defendant's. Highlighted in the Cotton transcript was a portion where Cotton stated that Cellmark was accredited by ASCLD/LAB from 1994 until the laboratory closed in 2005. Additionally, the petition alleged that in the transcript, Cotton "testified that, under Cellmark's procedures, when she signs off on a report, the expert is personally vouching for the accuracy of the Report."

¶ 12    The circuit court dismissed defendant's petition based on procedural grounds because defendant's claims could have been raised on direct appeal. Therefore, the court concluded the "doctrine of waiver" precluded it from entertaining the petition's claims. Alternatively, the court

noted that even if the petition's claims were not "waive[d]," they were nevertheless meritless. This appeal followed.

¶ 13 As a threshold matter, we must address the parties' dispute regarding whether defendant properly preserved his contention for appeal. On appeal, defendant contends that the court erred in dismissing his petition where it set forth an arguable claim that his "appellate counsel" was ineffective arguing before the United States Supreme Court for "failing to properly respond to a dispositive argument advanced by the State." Specifically, defendant argues that appellate counsel should have cited to the documents attached to his petition. The State counters, arguing that defendant's contention on appeal was not included in his petition. While the State concedes defendant's petition and argument on appeal both "address the general issue of whether the Cellmark report was formal or certified, they assail the performance of different attorneys." Accordingly, the State argues defendant forfeited review of his contention on appeal. In response, defendant argues that we should "extrapolate[]" an argument that his appellate counsel was ineffective from his petition and "deem[] [it] raised as part of the court's liberal construction of the petition" even though defendant referenced the ineffectiveness of his trial counsel.

¶ 14 Section 122-3 of the Post-Conviction Hearing Act (the Act) contains a forfeiture rule.[1] It states that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2012). In *People v. Jones*, 213 Ill. 2d

---

[1] While section 122-3 of the Act (725 ILCS 5/122-3 (West 2012)) and *People v. Jones*, 213 Ill. 2d 498, 505 (2004), refer to this rule as a "waiver" rule, we note that later cases refer to this rule as a "forfeiture" rule. See, *e.g.*, *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006); *People v. Reed*, 2014 IL App (1st) 122610, ¶¶ 42-43; *People v. Thomas*, 2014 IL App (2d) 121001, ¶¶ 4-5. Moreover, "forfeiture applies to issues that could have been raised but were not," whereas "waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *People v. Phipps*, 238 Ill. 2d 54, 62 (2010). In the present case, defendant has not intentionally relinquished a known right, and therefore, we will use the term "forfeiture" unless directly quoting the Act or case law using the term "waiver."

498 (2004), our supreme court stated that this forfeiture rule is not merely a suggestion for appellate courts. *Id.* at 505-06 (criticizing this court, stating that it "has repeatedly overlooked the waiver language of section 122-3 and has addressed claims raised for the first time on appeal for various and sundry reasons"). In fact, appellate courts are "not free, as [the supreme] court is under its supervisory authority, to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition." *Id.* at 508; see also *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006) (stating that the appellate court in the case before it that ignored section 122-3's language "is yet another example of that inappropriate propensity" to overlook forfeiture of arguments not raised in a postconviction petition). Accordingly, we may not excuse a defendant's forfeiture when he argues on appeal a contention not made in his postconviction petition. See *People v. Reed*, 2014 IL App (1st) 122610, ¶ 43 ("This court lacks the authority to excuse an appellate forfeiture caused by the failure of a litigant to include issues in his or her postconviction petition.").

¶ 15　　In analyzing whether defendant has forfeited his contention on appeal, we find instructive both *People v. Thomas*, 2014 IL App (2d) 121001 and *People v. Mars*, 2012 IL App (2d) 110695, where the State argued postconviction defendants had forfeited their claims on appeal for not raising them in their petitions.

¶ 16　　In *Mars*, the defendant's postconviction petition alleged that "his *trial counsel* was ineffective because he failed to challenge the sufficiency of the grand jury indictment, which 'omitted essential elements of the charges.' " (Emphasis added.) *Id.* ¶ 11. The petition also alleged errors by appellate counsel unrelated to the sufficiency of the indictment. *Id.* On appeal, the defendant argued that his "petition sufficiently alleged that *appellate counsel* was ineffective *** for not arguing that the 2007 indictment should have been dismissed because it charged

offenses subject to compulsory joinder with the 2005 indictment and violated defendant's right to a speedy trial." (Emphasis added.) *Id.* ¶ 13.

¶ 17    The reviewing court found that even with a liberal reading of defendant's petition, it could not construe the allegation in the petition as the argument raised on appeal. *Id.* ¶ 33. The court noted that the defendant's petition made explicit reference to the ineffectiveness of his " 'defense counsel' " for not challenging his indictment while on appeal, his argument "explicitly referred to errors of appellate counsel throughout the document when complaining of deficiencies in his direct appeal." *Id.* The court further noted that the defendant's petition was coherent and organized, setting "forth the record facts in a logical fashion with appropriate record citations and rais[ing] specific legal challenges." *Id.* Therefore, the court did not "have to comb through a morass of irrelevancies to try to figure out what defendant meant to raise as constitutional violations." *Id.* Accordingly, the court determined that the defendant forfeited his contention on appeal. *Id.*

¶ 18    Conversely, in *Thomas*, prior to trial, the circuit court ruled that a statement made by an incarcerated minor, admitting to the murder with which the defendant was charged, was inadmissible because the statement was unreliable, partially because the statement was not corroborated by other evidence. *Thomas*, 2014 IL App (2d) 121001, ¶ 1. The minor had confessed to detectives, but later recanted during a video-recorded interview. *Id.* The defendant's postconviction petition alleged "that [his] appellate counsel was ineffective for failing to allege [his] *trial counsel's* ineffectiveness" based on his trial counsel's failure to take additional steps to ensure the admissibility of the incarcerated minor's confession. (Emphasis added.) *Id.* ¶ 2. The petition also noted that the minor confessed to a jailhouse chaplain. *Id.* On appeal, the defendant argued that his "appellate counsel was ineffective for failing to argue that

the *trial court* erred in excluding [the minor's] conversations with the chaplain and for failing to argue that the chaplain's testimony would have corroborated [the minor's] statement to the detectives." (Emphasis in original.) *Id.* ¶ 3.

¶ 19 After summarizing the content of the various arguments in his petition, the court stated that "[t]he logical conclusion to be drawn from these allegations is what [the] defendant argues in this appeal: Chaplain Fricks' testimony is the 'other evidence' that should have been admitted to corroborate N.H.'s statement to the detectives." *Id.* ¶ 62. Additionally, the court distinguished its case from *Mars*, stating:

> "The petition and the postconviction appellate argument [in *Mars*] shared no underlying subject matter and identified different attorneys as having rendered ineffective assistance. Here, the petition and the postconviction appellate arguments both allege ineffectiveness of appellate counsel for omissions related to the underlying issue of the admissibility of [the minor's] confession."
>
> *Id.* ¶ 66.

Accordingly, the defendant in *Thomas* had not forfeited his arguments on appeal. *Id.* ¶ 63.

¶ 20 This case is more analogous to *Mars*. This defendant's petition made explicit reference to his "trial counsel" being ineffective "for not raising the constitutional violation argument that the authors (experts) of the report's [*sic*] effectively certified the report by signing it, thus violating the confrontation clause." Meanwhile, on appeal, defendant explicitly contends that it was his "appellate counsel" who was ineffective in arguing before the United States Supreme Court.

¶ 21 We acknowledge, and the State has conceded, the underlying subject matter in defendant's petition is similar to the argument on appeal. Additionally, defendant's petition and his argument on appeal directs us to the same three documents that should have been presented on his behalf: (1) Rule 11.1.2 of the FBI Standards; (2) the 2008 manual from ASCLD/LAB; and (3) the transcript from a prior, unrelated proceeding of defendant's in which Dr. Cotton testified.

¶ 22 However, unlike *Thomas*, where a defendant's claim on appeal referenced the same subject matter and attacked the performance of the same attorney as in his petition (see *id.* ¶¶ 62-63), in this case, only one element of defendant's argument overlaps: the subject matter. See *Reed*, 2014 IL App (1st) 122610, ¶¶ 60-63 (declining to excuse a defendant's forfeiture where the defendant alleged the ineffectiveness of his appellate counsel in both his petition and on appeal related to a statement he made that was admitted at trial, "but the respects in which [the defendant] allegedly received ineffective assistance of appellate counsel [were] distinctly different"). Merely because the subject matter is similar, we cannot simply substitute defendant's argument on appeal that his *appellate* counsel was ineffective into his petition's argument that his *trial* counsel was ineffective. See *Mars*, 2012 IL App (2d) 110695, ¶ 33. Furthermore, defendant's argument on appeal clearly directs us toward actions taken by his appellate counsel before the United States Supreme Court, allegations which are entirely missing from his petition that alleged only deficiencies in trial counsel's performance. For example, on appeal, defendant argues that the three documents attached to his petition would have been judicially noticeable by the Court, or alternatively, his appellate counsel could have formally requested the Court consider the documents pursuant to United States Supreme Court Rule 32.(3). Defendant's petition did not include any of these procedural steps.

¶ 23    Moreover, defendant's petition is organized, coherent and well-developed.    See *id*.
Defendant is not the "typical *pro se* litigant" who drafted "an inartful pleading."  *Jones,* 213 Ill.
2d at 504.  Instead, defendant's petition cited to relevant case law, detailed in depth his request
for additional forensic testing, including citations to articles from the Journal of Forensic Science
and the Journal of Law, Technology and Policy at the University of Illinois College of Law, and
appended relevant documents to his petition as exhibits.  We do not need to "comb through a
morass of irrelevancies to try to figure out what defendant meant to raise as constitutional
violations" (*Mars*, 2012 IL App (2d) 110695, ¶ 33), because here, defendant was clear about the
type of relief he requested.

¶ 24    Even so, we remain mindful that there is a low threshold to move beyond the first stage in
a postconviction proceeding.  See *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009).  However, the
proper inquiry on appeal is "whether the allegations *in the petition*, liberally construed and taken
as true, are sufficient to invoke relief under the Act."   (Emphasis in original and internal
quotation marks omitted.)  *People v. Cathey*, 2012 IL 111746, ¶ 21 (quoting *People v. Jones*, 211
Ill. 2d 140, 148 (2004)).  Therefore, any claims assessed by a reviewing court "must be presented
in the petition filed in the circuit court."  (Internal quotation marks omitted.)  *Id.*  Accordingly,
because defendant's claim on appeal that his appellate counsel was ineffective was not raised in
his postconviction petition, he forfeited review of it on appeal.  See 725 ILCS 5/122-3 (West
2012); *Jones*, 213 Ill. 2d at 505-06.

¶ 25    Nevertheless, defendant argues that our supreme court rejected "identical arguments"
concerning forfeiture that the State has made in his case in *Hodges*, 234 Ill. 2d at 21, and *People
v. Brown*, 236 Ill. 2d 175, 188 (2010).  However, in both cases, the petitions and the defendants'
arguments on appeal alleged the ineffectiveness of their trial counsel.  See *Id.* at 181-82; *Hodges*,

234 Ill. 2d at 6-9. The issues in both cases concerned the sufficiency of the factual allegations in the defendants' petitions to support their legal theories. See *Brown*, 236 Ill. 2d at 188-89; *Hodges*, 234 Ill. 2d at 20-21. The issue before us concerns the identity of the attorney whose performance defendant assails, not the sufficiency of the factual allegations underlying his claim. Accordingly, we believe that defendant's analogy to *Hodges* and *Brown* is inapt.

¶ 26 Despite the forfeiture, we will briefly address defendant's argument on the merits. He contends that his petition set forth an arguable claim that his United States Supreme Court counsel was ineffective for failing to cite to his petition's three relevant documents, which would have persuaded Justice Thomas to conclude that admission of the DNA testimony violated defendant's right to confrontation. Had Justice Thomas changed his vote and sided with the four dissenting justices in *Williams*, 567 U.S. ___, 132 S. Ct. 2221, the Illinois Supreme Court would have been reversed and the evidence would have been ruled inadmissible.

¶ 27 The Act (725 ILCS 5/122-1 *et seq.* (West 2012)), allows review of a defendant's claim where there was a "substantial denial of his *** rights" under either, or both, the Illinois Constitution or United States Constitution in the proceedings that resulted in his conviction. 725 ILCS 5/122-1(a)(1) (West 2012). In the first stage under the Act, the circuit court must determine whether the defendant's petition is "frivolous" or "patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). If a defendant's petition is "frivolous" or "patently without merit," the court will dismiss the petition. *Id.*

¶ 28 A petition is considered "frivolous" or "patently without merit" when it has "no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. A petition will have "no arguable basis either in law or in fact" when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* Where the record contradicts a defendant's legal theory, his theory is

meritless. *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17. Because whether the circuit court properly dismissed a defendant's petition in the first stage of the Act is purely a question of law, we review first-stage dismissals *de novo*. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 29    A defendant has a right to effective assistance of appellate counsel. *People v. Easley*, 192 Ill. 2d 307, 328 (2000). A postconviction petition alleging ineffective assistance of counsel may not be summarily dismissed if: (1) "it is arguable that counsel's performance fell below an objective standard of reasonableness" and (2) "it is arguable that the defendant was prejudiced." *Hodges,* 234 Ill. 2d at 17.

¶ 30    Even if defendant had preserved this argument, it is nonetheless meritless because he cannot show it is arguable that his appellate counsel's performance was objectively unreasonable. First, defendant's appellate counsel brought his case all the way to the United States Supreme Court and managed to convince four of the nine justices that a constitutional violation occurred. Additionally, defendant's appellate counsel made the same substantive argument that defendant's petition alleges that his appellate counsel should have made, simply without specifically citing the three documents he requested. In defendant's reply brief before the United States Supreme Court, his appellate counsel appealed directly to Justice Thomas's idiosyncratic definition of testimonial statements and argued:

> "[Cellmark's] report was a 'formal statement [made] to government officers' 'for the purpose of establishing or proving some fact,' the report was more like a response to a Marian

investigation[2] than an informal comment made to police officers, and therefore, was a sufficiently 'solemn declaration' to rank as testimonial." Reply Brief for Petitioner at 21, *Williams v. Illinois*, 567 U.S. ___, 132 S. Ct. 2221 (2012) (No. 10-8505) (citing cases).

¶ 31    Defendant's appellate counsel devoted an entire section of the reply brief to Justice Thomas's definition of testimonial statements, including citations to Justice Thomas's various dissents and concurrences on the issue, clearly responding to the State's dispositive argument concerning the formality, or lack thereof, of the Cellmark Report. See *id.* at 18-21. Defendant's petition simply contends that his appellate counsel could have argued better by referencing the documents attached to his petition. However, defendant is not entitled to "perfect []" representation." See *Easley*, 192 Ill. 2d at 344 (stating "ineffective assistance of counsel refers to competent, not perfect, representation"). The record is clear that defendant's appellate counsel made the substantive arguments discussed in defendant's petition. Therefore, the record rebuts any potential claim of ineffective assistance of appellate counsel, and the claim has no arguable basis in law. See *Hodges*, 234 Ill. 2d at 16. Accordingly, there is no arguable claim that appellate counsel's performance was objectively unreasonable. See *id.* at 17.

¶ 32    Even if we could construe the petition as raising a claim regarding appellate counsel, it would still fail. It is wholly speculative that Justice Thomas would have changed his conclusion if defendant's appellate counsel had argued slightly differently or better, which cannot support a claim of ineffective assistance of counsel. See *People v. Bew*, 228 Ill. 2d 122, 135 (2008) (stating a claim for ineffective assistance of counsel "requires actual prejudice be shown, not

---

² For a discussion concerning "Marian" investigations and their relevance to the right of confrontation, see *Crawford v. Washington*, 541 U.S. 36, 43-53 (2004).

mere speculation as to prejudice"). The claim is rooted in the notion that Justice Thomas was unsure of the law, did not know how to follow it and that better appellate representation would have guided him. It is simply fanciful to argue that a justice of the United States Supreme Court would have changed his conclusion based on a speculatively better argument by defendant's appellate counsel when the substance of the argument was, in fact, made to Justice Thomas by that counsel. See Reply Brief for Petitioner at 18-21, *Williams v. Illinois*, 567 U.S. \_\_\_, 132 S. Ct. 2221 (2012) (No. 10-8505).

¶ 33    Additionally, it is more than a stretch to think that Justice Thomas would have simply overlooked references in the *amici* briefs to the same documents and arguments defendant wishes his appellate counsel would have advanced. For example, an *amicus* brief cited the FBI Standards and included them as an appendix to the brief. See Brief for New York County District Attorney's Office and the New York City Office of the Chief Medical Examiner as *Amici Curiae* Supporting Respondent at 4-5, *Williams v. Illinois*, 567 U.S. \_\_\_, 132 S. Ct. 2221 (2012) (No. 10-8505); Appendix to Brief for New York County District Attorney's Office and the New York City Office of the Chief Medical Examiner as *Amici Curiae* Supporting Respondent, *Williams v. Illinois*, 567 U.S. \_\_\_, 132 S. Ct. 2221 (2012) (No. 10-8505). Another *amicus* brief made continuous reference to Cellmark's accreditation by ASCLD/LAB and the quality assurance standards of ASCLD/LAB. See Brief for Public Defender Service for the District of Columbia and National Association of Criminal Defense Lawyers as *Amici Curiae* Supporting Petitioner at 21-25, *Williams v. Illinois*, 567 U.S. \_\_\_, 132 S. Ct. 2221 (2012) (No. 10-8505). Still, another *amicus* brief argued that the Court's previous jurisprudence "make[s] clear" that analysts' reports and conclusions produce more than just "raw data," but rather "certify that the analyst[s] followed certain procedures, performed certain acts, and interpreted

the results to arrive at the offered conclusions." Brief for the Innocence Network as *Amicus Curiae* Supporting Petitioner at 3, *Williams v. Illinois*, 567 U.S. ___, 132 S. Ct. 2221 (2012) (No. 10-8505).

¶ 34    Moreover, it is clear the justices in *Williams* argued internally over whether the Cellmark report was sufficiently formal. For example, the dissent criticized Justice Thomas for finding the report insufficiently formal because although the report was not specifically labeled a " 'certificate,' " the report bore "similarities in form, function, and purpose" to reports he found sufficiently formal in *Melendez-Diaz* and *Bullcoming*. *Id.* at ___, 132 S. Ct. at 2276 (Kagan, J., dissenting, joined by Scalia, Ginsburg, and Sotomayor, JJ.). Responding to the dissent, Justice Thomas remarked that "Cellmark's report, in substance, certifies nothing" and "is marked by no such indicia of solemnity." *Id.* at ___, 132 S. Ct. at 2260-61 (Thomas, J., concurring). Justice Thomas even acknowledged reviewing the Cellmark report, noted it was signed by two " 'reviewers,' " but found the reviewers never "purport[ed] to have performed the DNA testing nor certif[ied] the accuracy of those who did." *Id.* at ___, 132 S. Ct. at 2260. Therefore, we cannot possibly conclude that Justice Thomas would not uncover the fundamental pieces of evidence bearing on his definition of testimonial statements. Accordingly, forfeiture aside, the petition's allegations fail to set forth an arguable basis in fact that defendant was prejudiced by his allegedly objectively unreasonable performance by appellate counsel. See *Hodges*, 234 Ill. 2d at 16-17.

¶ 35    We affirm the order of the circuit court of Cook County dismissing defendant's postconviction petition.

¶ 36    Affirmed.