2020 IL App (1st) 171873-U

No. 1-17-1873

Order filed April 30, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 03392 |
| | ) | |
| JUAN PEREZ, | ) | Honorable |
| | ) | Gregory Robert Ginex, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's summary dismissal of defendant's *pro se* postconviction petition where the petition did not raise the claim he argues on appeal in the circuit court.

¶ 2    Defendant Juan Perez appeals the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends that he presented the gist of a claim that appellate counsel was ineffective for failing to argue that defendant's show-up identification should have been suppressed and that one

of his convictions for aggravated vehicular hijacking should be vacated under the one-act, one-crime doctrine. For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with multiple counts of aggravated vehicular hijacking, armed robbery, aggravated battery, aggravated unlawful restraint, and aggravated unlawful use of a weapon (AUUW). We recount the facts from defendant's bench trial only to the extent necessary to resolve the issues on appeal.

¶ 4    Oscar Burgos testified that on February 9, 2011, he was with a customer, Howard Baker, in his body shop in Melrose Park, Illinois, when two men entered. One man, whom Burgos identified in court as defendant, was Latino, and the other was African-American. Both wore jeans and black hooded sweatshirts, and neither wore a mask. Burgos initially was 12 to 13 feet from defendant. The African-American man had a revolver and defendant had an "automatic firearm." Burgos was facing the two men, and all the lights were on in his shop.

¶ 5    The African-American man instructed Burgos to approach him. When Burgos complied, the man pointed his firearm at Burgos and grabbed his collar. At this point, Burgos was two to three feet from defendant. The African-American man searched Burgos's pockets as defendant pointed his firearm at Baker's head and directed Baker to the office. Burgos ran to his vehicle and then observed Baker's Lincoln Town Car back out of the garage and drive down George Street.

¶ 6    Burgos returned to the shop and found Baker face down on the office floor. Police officers arrived shortly thereafter and told Burgos a suspect was in custody. The officers brought Burgos to the White Castle restaurant on North Avenue. Burgos observed defendant in a white sweatshirt, standing with two officers beside a police vehicle. Burgos told the officers that defendant robbed him, and testified that defendant was the individual who pointed a firearm at Baker's head.

¶ 7    Baker testified that one of the men who entered the shop was African-American and the other was "pale-faced." Baker "didn't see anything but a gun in [his] face," and could not perceive the nationality or clothing of the pale-faced man. Later, Baker went to the parking lot for a show-up, but was unable to identify defendant as one of the offenders.

¶ 8    Thomas Domanus testified that on February 9, 2011, he was working at a car wash in Melrose Park when a vehicle entered the lot and a man whom Domanus believed was Latino exited and ran. During a show-up, Domanus told police he was not sure if defendant was the man he observed fleeing from the vehicle.

¶ 9    Franklin Park police officer Donald Giuliano and Detective Tom Ferris testified that on February 9, 2011, they went to a car wash on North Avenue and found a white Lincoln Town Car that was reported stolen. Afterwards, they looked for the suspect, a Latino with facial hair wearing a black hooded sweatshirt, and observed a man matching that description running through the parking lot of the White Castle. Giuliano and Ferris identified the fleeing man in court as defendant. Giuliano added that defendant wore "a short-sleeve shirt or a long-sleeve shirt with his sleeves rolled up," without a jacket. Giuliano suspected defendant had "just removed his black hoodie." Giuliano detained defendant and asked "where he was coming from." Defendant responded that he was a prostitute from Indiana on his way to Bally's to meet a client he met on Craigslist.

¶ 10    Melrose Park police officer Chris Korsch testified that he met other officers at a White Castle, where they had detained defendant. Korsch identified defendant in court, and testified that Burgos identified defendant in a show-up as the man who was at his store.

¶ 11    The parties stipulated that Detective Salvi recovered two firearms from the Lincoln.[1] The State entered into evidence an Illinois State Police record indicating defendant had not been issued a Firearm Owner's Identification Card at the time of arrest.

¶ 12    The defense called investigator James Madden, who testified that he measured the distance between the middle of the car wash parking lot to the middle of the White Castle parking lot and determined it was 516 feet.

¶ 13    The trial court found defendant guilty of two counts of aggravated vehicular hijacking, one count of aggravated battery, two counts of aggravated unlawful restraint, and four counts of AUUW. At a sentencing hearing, the court stated that "the minimum sentence in this case is 21 years," comprising "6 years and 15 for having a gun," and sentenced defendant to 21 years in prison. A mittimus later signed by a different judge showed defendant received 21 years for each offense.

¶ 14    On direct appeal, defendant claimed that his identification as the offender was unreliable, the State failed to prove a vehicle was taken from the immediate presence of the victim, and the trial court's oral pronouncement that the minimum sentence was 21 years could only apply to the counts for aggravated vehicular hijacking. Thus, defendant argued that the trial court only imposed sentence for aggravated vehicular hijacking, and contrary to the mittimus, did not impose sentences for the other offenses. We remanded for the trial court to impose sentences on the other offenses and otherwise affirmed. *People v. Perez*, 2016 IL App (1st) 140869-U.

¶ 15    On January 4, 2017, prior to the new sentencing hearing, defendant filed a *pro se* petition for postconviction relief. Relevant here, defendant alleged that he was denied effective assistance where trial counsel failed to (1) properly argue the show-up identification was unreliable, (2) file

---

[1] Salvi's first name does not appear in the record.

4

a motion to suppress the show-up identification, (3) argue misidentification, (4) adequately impeach Burgos with a pending felony charge, (5) argue that one of defendant's aggravated vehicular hijacking convictions was void under the one-act, one-crime doctrine, and (6) argue that the 15-year firearm enhancement should have been "dismissed."

¶ 16     On February 16, 2017, the trial court held a sentencing hearing on remand at which defendant appeared *pro se*. The court stated that defendant's sentences of 21 years' imprisonment for the two counts of aggravated vehicular hijacking would "remain the same." The court sentenced defendant to terms of two years' imprisonment for aggravated battery and each of the two counts of aggravated unlawful restraint. Additionally, the court merged the four counts of AUUW into two counts of AUUW, and imposed one-year terms on each of those counts. Finally, the court apprised defendant that he could refile his postconviction petition that day, which defendant did.

¶ 17     On May 12, 2017, the circuit court summarily dismissed defendant's postconviction petition as "frivolous and patently without merit." In relevant part, the court stated that whether to file motions to quash arrest and suppress evidence "are matters of trial strategy and are, therefore, not challengeable as ineffective assistan[ce] of counsel." Further, "there was a show-up and no lineup for the defense to present a Motion to Quash *** or suppress the evidence on." The court did not specifically address defendant's ineffective assistance claim based on trial counsel's failure to argue that one of defendant's aggravated vehicular hijacking convictions was void under the one-act, one-crime doctrine.

¶ 18     On appeal, defendant argues that the circuit court erred in summarily dismissing his petition because he presented the gist of a claim that appellate counsel was ineffective for failing to argue that defendant's show-up identification should have been suppressed and that one of his

5

convictions for aggravated vehicular hijacking should be vacated under the one-act, one-crime doctrine.

¶ 19    The Act provides a three-stage mechanism for a defendant who alleges he suffered a substantial deprivation of his constitutional rights. *People v. Johnson*, 2018 IL 122227, ¶ 14. At the first stage, a defendant need only plead sufficient facts to state the "gist" of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A circuit court may only dismiss a petition through a written order if it determines that the petition is "frivolous or patently without merit." *Id.* at 10. A petition is frivolous or patently without merit when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. "[A]n indisputably meritless legal theory is one that is completely contradicted by the record," and "[f]anciful factual allegations include those that are fantastic or delusional." (Internal quotation marks omitted.) *People v. White*, 2014 IL App (1st) 130007, ¶ 18.

¶ 20    The circuit court must liberally construe a petition's allegations at the first stage. *People v. Jones*, 213 Ill. 2d 498, 505 (2004). Notwithstanding, the defendant must set forth all potential claims in his petition, and "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016). The appellate court cannot consider claims that the defendant did not include in his postconviction petition, nor may counsel argue such claims on appeal. See *People v. Cole*, 2012 IL App (1st) 102499, ¶¶ 15-16; see also *Jones*, 213 Ill. 2d at 508 ("[O]ur appellate court is not free, as this court is under its supervisory authority, to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition."). We review a first-stage dismissal of a postconviction petition *de novo*. *People v. Simms*, 192 Ill. 2d 348, 360 (2000).

¶ 21    The State contends that defendant forfeited his claim of ineffective assistance of counsel on direct appeal because his postconviction petition only discussed ineffective assistance of trial counsel. Defendant concedes that he did not expressly allege ineffective assistance of appellate counsel in his postconviction petition, but asserts that we must liberally construe his allegations to include that claim.

¶ 22    *People v. Williams*, 2015 IL App (1st) 131359 and *People v. Reed*, 2014 IL App (1st) 122610 are instructive. In *Williams*, the defendant filed a *pro se* postconviction petition alleging trial counsel provided ineffective assistance, which the circuit court dismissed. *Williams*, 2015 IL App (1st) 131359, ¶ 12. On appeal, the defendant argued his petition set forth an arguable claim that counsel on direct appeal was ineffective, and the State countered that the defendant forfeited review of his claim by failing to raise it in his petition. *Id.* ¶ 13. The defendant argued that, giving his petition a liberal construction, the appellate court should "extrapolate" an argument that appellate counsel was ineffective even though the petition only referenced the ineffectiveness of trial counsel. *Id.* We disagreed, noting that we could not "simply substitute [his] argument on appeal that his *appellate* counsel was ineffective into his petition's argument that his *trial* counsel was ineffective." (Emphasis in original.) *Id.* ¶ 22.

¶ 23    In *Reed*, the defendant's *pro se* postconviction petition alleged, in pertinent part, that trial counsel was ineffective for failing to file a pretrial motion to suppress an alleged oral statement and appellate counsel was ineffective for failing to challenge the admissibility of the statement on hearsay grounds. *Reed*, 2014 IL App (1st) 122610, ¶¶ 26-28. The circuit court summarily dismissed the defendant's petition, and on appeal, he argued appellate counsel was ineffective for failing to challenge the admissibility of the statement on constitutional grounds. *Id.* ¶¶ 32, 41. The defendant asserted that although he did not state that precise claim in his petition, his claim that

7

trial counsel was ineffective for failing to file a motion to suppress the statement should be construed as a claim that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel. *Id.* ¶ 61. We rejected this argument, noting that the petition set forth claims of ineffective assistance of trial counsel that were distinct from the claims of ineffective assistance of appellate counsel, and to interpret them as the same "would require more than liberal construction." *Id.*

¶ 24     In this case, defendant's postconviction petition alleged that trial counsel was ineffective for not properly arguing the show-up identification was unreliable, failing to file a motion to suppress the show-up identification, failing to argue misidentification, not adequately impeaching Burgos with a pending felony charge, failing to argue that one of defendant's aggravated vehicular hijacking convictions was void under the one-act, one-crime doctrine, and failing to argue that the 15-year firearm enhancement should have been dismissed. Defendant's petition does not mention any claims of ineffective assistance of appellate counsel. Thus, interpreting his petition as encompassing his claim on appeal regarding appellate counsel would require more than the permissible liberal construction. See *id.* Therefore, defendant's ineffective assistance of appellate counsel claim is forfeited. See *id.*; *Williams*, 2015 IL App (1st) 131359, ¶ 22.

¶ 25     Still, defendant argues *People v. Thomas*, 2014 IL App (2d) 121001 compels a different result. In *Thomas*, the circuit court ruled that a statement made by an incarcerated minor claiming responsibility for the offense for which defendant had been convicted was inadmissible because it was uncorroborated and thus unreliable. *Thomas*, 2014 IL App (2d) 121001, ¶ 1. The minor allegedly confessed to detectives and a jail chaplain, but recanted the confession in an interview recorded on video. *Id.* ¶¶ 1-2. The defendant claimed in his *pro se* postconviction petition that appellate counsel provided ineffective assistance by failing to argue trial counsel was ineffective

for not ensuring that the minor's confession was admitted. *Id.* ¶ 2. The circuit court summarily dismissed the petition, and on appeal, the defendant argued "appellate counsel was ineffective for failing to argue that the *trial court* erred in excluding [the minor's] conversations with the chaplain and for failing to argue that the chaplain's testimony would have corroborated [the minor's] statement to the detectives." (Emphasis in original.) *Id.* ¶ 3. The State argued the defendant forfeited his claim because his petition focused on the minor's statement to the detectives, not to the chaplain, and stated that trial counsel erred, not the trial court. *Id.* ¶ 4. We disagreed, reasoning:

> "A liberal construction of the *pro se* petition, defendant's affidavit, and the record shows that the petition alleges that (1) appellate counsel was ineffective for omissions on direct appeal, (2) trial counsel failed to take the proper steps to corroborate [the minor's statement] (3) [the chaplain] would have testified at trial that [the minor] confessed, (4) the trial court excluded [the minor's] separate statements to the detectives and to [the chaplain], and (5) [the minor's] statement to the detectives would have been admitted upon proper corroboration. The logical conclusion to be drawn from these allegations is what [the] defendant argues in this appeal: [the chaplain's] testimony is the 'other evidence' that should have been admitted to corroborate [the minor's] statement to the detectives." *Id.* ¶ 62.

¶ 26 In contrast to *Thomas*, where the defendant's petition in fact alleged ineffective assistance of appellate counsel, here defendant's petition exclusively alleged ineffective assistance of trial counsel. See *id.* Therefore, *Thomas* is distinguishable, and does not change the outcome here.

¶ 27 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 28 Affirmed.