2023 IL App (1st) 210300-U

No. 1-21-0300

Order filed January 25, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 24020 |
| | ) | |
| SCOTT RANFT, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the first-stage dismissal of defendant's postconviction petition because he forfeited his argument that counsel on direct appeal was ineffective for failing to challenge the sufficiency of the evidence supporting his aggravated kidnapping conviction, and because the circuit court's dismissal of the petition did not violate the procedural requirements of the Post-Conviction Hearing Act.

¶ 2    Following a jury trial, defendant, Scott Ranft, was found guilty of two counts of aggravated criminal sexual assault and one count of aggravated kidnapping and was sentenced to 28 years' imprisonment. We affirmed defendant's convictions on direct appeal. *People v. Ranft*, No. 1-20-

3288 (2003) (unpublished order under Supreme Court Rule 23). Defendant filed a *pro se* petition for postconviction relief, raising approximately 11 claims of trial error and 13 claims of ineffective assistance of trial and appellate counsel. Relevant here, defendant alleged that counsel on direct appeal failed to consult with him and only raised the admissibility of a treating nurse's testimony, which, according to defendant, was the weakest issue counsel could have chosen. In separate sections of his petition, defendant alleged that the evidence was insufficient to support his convictions. Defendant now appeals from the first-stage dismissal of his petition, contending that (1) his petition stated an arguable claim that counsel on direct appeal rendered ineffective assistance by failing to challenge the sufficiency of the evidence of aggravated kidnapping and (2) the circuit court violated the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) by dismissing his petition in an oral ruling rather than a written order. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Trial and Direct Appeal

¶ 5      Defendant was charged with a total of 21 counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2)-(4) (West 2000)), criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2000)), aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2000)), kidnapping (720 ILCS 5/10-1(a)(1), (2) (West 2000)), and aggravated battery (720 ILCS 5/12-4(b)(8) (West 2000)), arising out of his violent sexual assault of the victim, J.T., on September 23, 2001.[1] The State proceeded to trial on counts of aggravated criminal sexual assault and aggravated kidnapping.

---

[1] Although the victim was an adult at the time of the incident, we refer to her by her initials to protect her privacy in this sexual assault case. See *People v. Munoz-Salgado*, 2016 IL App (2d) 140325 ¶ 1 n. 1.

¶ 6    J.T. testified that she was walking on Melvina Avenue toward Belmont Avenue in Chicago at approximately 1:00 p.m. on September 23, 2001, when defendant, whom she identified in court, grabbed her buttocks from behind. J.T told defendant to stop and tried to push his hands away. Defendant grabbed J.T. from behind and dragged her into a nearby alley as he threatened to kill her. In the alley, defendant pressed J.T. against a parked truck, removed her pants and underwear, and fondled her vagina. Defendant also inserted his fingers into J.T.'s vagina and tried to insert his penis into her vagina. J.T. was screaming, so defendant struck her right cheek with an open hand, threatened to kill her again, and told her not to call police. Defendant's grip on J.T. loosened such that she was able to turn around and see his face for approximately 30 seconds. Defendant then inserted his fingers and part of his penis into J.T.'s vagina. J.T. offered defendant two $50 bills to stop; he took the cash but did not stop assaulting her. J.T. told defendant that there was a police officer behind him, so he released her and ran away. J.T. ran in the opposite direction, saw a police vehicle, reported the assault to an officer, and provided a description of defendant. The officer took J.T. to her uncle's home, then to a hospital where she received blood tests, a gynecological examination, and medication. Later that day, J.T. identified defendant to police in a photo array, and the following day, she identified defendant in a lineup. At trial, J.T. identified photographs of the scene and herself at the hospital, the photo array, and a photograph of the lineup. The State moved these exhibits into evidence.

¶ 7    Chicago police officer George Burkart testified that he was on duty, in uniform, and in a marked police vehicle on the afternoon of September 23, 2001. J.T. approached Burkart's police vehicle screaming for help and pointing to an alley behind a restaurant. She told Burkart that she

had been raped and provided a description of defendant. Burkart took J.T to her uncle's home and then to a hospital for medical attention.

¶ 8      Nurse Debra Delaney testified that she treated J.T. at Our Lady of the Resurrection Hospital on the afternoon of September 23, 2001. J.T. told Delaney that she had been raped. She stated that a man grabbed her buttocks from behind as she was walking down the street. She screamed and the man grabbed her, pushed her up against a truck, pulled down her pants, assaulted her vagina with his fingers, and attempted to insert his penis into her vagina. Delaney and an emergency room doctor conducted a sexual assault kit, which included swabs of J.T.'s vagina, pubic hair combings, and blood standards. Another nurse provided the sexual assault kit to a police evidence technician. Delaney gave J.T. medication to prevent sexually transmitted infections.

¶ 9      Detective William Kernan testified that he arrested defendant, whom he identified in court, at the home of one of defendant's acquaintances on the evening of September 23, 2001. Defendant was holding cash, including a $50 bill, when he was arrested. At a police station the following day, Kernan gave defendant *Miranda* warnings and took a statement from him. Defendant admitted that he grabbed J.T.'s buttocks from behind as she was walking down the street. When she told him to stop and tried to get away from him, he pulled her into an alley near a truck. He pulled both his and J.T.'s pants down and masturbated while penetrating her vagina with his fingers; he also yelled at her to stop screaming and took cash from her. After a short time, defendant pulled up his pants, returned to his vehicle, and left the area. Kernan was present when Assistant State's Attorney Eugene Wood interviewed defendant several hours later on September 24, 2001.

¶ 10      Assistant State's Attorney Eugene Wood testified that he obtained oral and written statements from defendant, whom he identified in court, at a police station on September 24, 2001.

The State moved the written statement, which Wood prepared and defendant signed, into evidence. It is essentially the same as his oral statement to Kernan, but defendant added that J.T. "fake[d] him out" by telling him that a police officer was nearby.

¶ 11    Illinois State Police forensic scientist Douglas Ridolfi testified that he was unable to test the vaginal swabs for defendant's DNA because no semen was present. The parties stipulated that a fingerprint that a Chicago police evidence technician recovered from the white truck was not suitable for comparison.

¶ 12    The jury found defendant guilty of two counts of aggravated criminal sexual assault premised on contact between his finger and J.T.'s vagina and contact between his penis and J.T.'s vagina, as well as one count of aggravated kidnapping. The trial court sentenced defendant to a total of 28 years' imprisonment.

¶ 13    On direct appeal, defendant only argued that the trial court erred by admitting Delaney's testimony about J.T.'s description of the incident because that testimony was inadmissible hearsay. We affirmed. *People v. Ranft*, Case No. 1-02-3288 (2003) (unpublished order under Supreme Court Rule 23).

¶ 14                         B. Postconviction Proceedings

¶ 15    On July 21, 2020, Defendant filed a *pro se* postconviction petition, which raised approximately 11 claims of trial error and 13 claims of ineffective of assistance of trial and appellate counsel. Relevant here, defendant's petition argued that counsel on direct appeal was ineffective because counsel "did not consult with defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error," and because counsel "chose the weakest argument on appeal – He[ar]say rule violation of Nurse Delaney." In separate sections of

his petition, defendant alleged that the evidence was insufficient to prove that (1) he committed aggravated kidnapping and (2) he struck J.T. in the face as the aggravating factor for aggravated criminal sexual assault.

¶ 16    The circuit court summarily dismissed defendant's petition on August 5, 2020. In an oral ruling, the court addressed defendant's arguments regarding the sufficiency of the evidence and trial counsel's failure to file a motion pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[2] The court rejected those arguments, explaining:

> "[Defendant] did have a motion to suppress statements. The *Franks* doctrine does not apply to his case and I don't see – he's stating a claim about his identification that merits further review at this stage because he's talking now about the quality of evidence against him rather than constitutional violations. I'm finding no constitutional infirmities with this case and his motion for postconviction relief is respectfully denied. Clerk to notify. His claim is without merit."

That day, the court handwrote on a criminal disposition sheet: "*pro se* P[ost] C[onviction] denied w/o merit. Clerk to notify."

¶ 17    We granted defendant leave to file late notice of appeal.

¶ 18                                    II. ANALYSIS

---

[2] In *Franks*, the United States Supreme Court held that where a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and that statement was necessary to a probable cause finding, the trial court must hold a hearing to determine whether the defendant's fourth amendment rights were violated if the defendant so requests. *Franks*, 438 U.S. at 155-56; *People v. Manzo*, 2018 IL 122761, ¶ 15 n. 2. In this case, defendant was not arrested pursuant to a warrant, but his petition nevertheless argued that trial "counsel was ineffective for not conducting a *Franks* hearing in regards to the warrantless arrest."

¶ 19    On appeal, defendant contends that we should reverse the first-stage dismissal of his postconviction petition because he stated an arguable claim that counsel on direct appeal rendered ineffective assistance by failing to argue that the evidence was insufficient to support his conviction for aggravated kidnapping. Defendant also argues that the circuit court violated the procedural requirements of the Act by dismissing his petition in an oral ruling rather than a written order.

¶ 20    The Act provides a three-stage mechanism by which a criminal defendant can assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Myles*, 2020 IL App (1st) 171964, ¶ 17. At the first stage of postconviction proceedings, the circuit court must review the defendant's petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). "A postconviction petition is frivolous or patently without merit when its allegations, taken as true and liberally construed, fail to present the gist of a constitutional claim." *People v. Harris*, 224 Ill. 2d 115, 126 (2007). That is, a petition is frivolous or patently without merit when it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law or fact if it is "based on an indisputably meritless legal theory," "completely contradicted by the record," or contains "a fanciful factual allegation." *Id.* At the first stage, the circuit court cannot engage in fact-finding or credibility determinations; rather, it must accept well-pleaded allegations as true unless they are positively rebutted by the trial record. *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 30. If the circuit court concludes that the petition is frivolous or patently without merit, it must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2020).

¶ 21    We review the first-stage dismissal of a postconviction petition *de novo* (*Hodges*, 234 Ill. 2d at 9), meaning that we perform the same analysis as the circuit court (*People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151). We construe *pro se* petitions liberally and allow borderline cases to proceed. *People v. Mars*, 2012 IL App (2d) 110695, ¶ 32. A *pro se* petition need not allege facts supporting all elements of a constitutional claim (*id.*), but it must "clearly set forth" how the petitioner's constitutional rights were violated ((Internal quotation marks omitted.) *Hodges*, 234 Ill. 2d at 9)). "Liberal construction does not mean that we distort reality." *Mars*, 2012 IL App (2d) 110695, ¶ 32.

¶ 22                    A. Ineffective Assistance of Appellate Counsel

¶ 23    Defendant contends that his petition stated an arguable claim that counsel on direct appeal was ineffective for failing to challenge the sufficiency of the evidence of aggravated kidnapping. A claim of ineffective assistance of appellate counsel is cognizable under the Act. *People v. Mack*, 167 Ill. 2d 525, 531 (1995). However, the State maintains that defendant has forfeited this claim because his petition did not raise it. A defendant forfeits a claim on appeal if he did not raise that claim in his postconviction petition. *People v. Petrenko*, 237 Ill. 2d 490, 502-03 (2010); 725 ILCS 5/122-3 (West 2020) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.").[3] We do not have supervisory authority to excuse forfeiture caused by a defendant's failure to include an issue in his postconviction petition. *People v. Reed*, 2014 IL App (1st) 122610, ¶ 43 (citing *People v. Jones*, 213 Ill. 2d 498, 507-08 (2004)).

---

[3] Section 122-3 uses the term "waived," but it is more accurate to say that a claim not raised in a postconviction petition is forfeited on appeal. "[F]orfeiture applies to issues that could have been raised but were not," whereas "waiver is the intentional relinquishment or abandonment of a known right." *People v. Phipps*, 238 Ill. 2d 54, 62 (2010).

¶ 24    Defendant's petition does not allege that counsel on direct appeal was ineffective for failing to challenge the sufficiency of the evidence of aggravated kidnapping. Rather, it alleges ineffective assistance of appellate counsel for (1) failing to consult with defendant and (2) "cho[osing] the weakest argument on appeal;" namely, an argument regarding the admissibility of Delaney's testimony about J.T.'s statements to her. Separately from this ineffective assistance argument, the petition contains sections challenging the sufficiency of the evidence of aggravated kidnapping and whether defendant struck J.T. in the face. At no point does defendant premise a claim of ineffective assistance of appellate counsel on the alleged insufficiency of the evidence supporting his aggravated kidnapping conviction. "[C]laims of ineffective assistance of appellate counsel cannot be inferred *** simply because issues of trial error were not raised on direct appeal." *People v. Cole*, 2012 IL App (1st) 102499, ¶ 13. That is, every claim of trial error does not carry with it an implied claim of ineffective assistance of appellate counsel for failing to raise that issue on direct appeal. *Id.* So, even construing defendant's petition liberally, we cannot find that he states a claim that appellate counsel was ineffective for failing to argue the sufficiency of the evidence of aggravated kidnapping. To reach the result that defendant desires, we would have to (1) interpret his allegation of ineffective assistance of appellate counsel as a generalized catch-all that applies to all his claims of trial error, which *Cole* prohibits, and (2) ignore the fact that he *did* identify specific grounds of ineffective assistance of appellate counsel, and failure to challenge the sufficiency of the evidence was not among them. That would be distorting reality, which we cannot do. See *Mars*, 2012 IL App (2d) 110695, ¶ 32.

¶ 25    Defendant argues that his claim that appellate counsel "chose the weakest argument," combined with his claims regarding the sufficiency of the evidence, amount to an argument that

appellate counsel was ineffective because counsel did not challenge the sufficiency of the evidence of aggravated kidnapping. However, as explained above, *Cole* prohibits this type of claim bootstrapping. See *Cole*, 2012 IL App (1st) 102499, ¶ 13. Otherwise, a defendant could allege ineffective assistance of appellate counsel without any specified grounds in his petition, then, on appeal, tie that to any of his claims of trial error, even though the circuit court never ruled on any grounds of ineffective assistance of appellate counsel. This approach would circumvent the Act's requirement that a petition must *clearly* set forth the respects in which the defendant's constitutional rights were violated (*Reed*, 2014 IL App (1st) 122610, ¶ 57), and it would result in this court addressing postconviction arguments raised for the first time on appeal, which we lack authority to do (*Jones*, 213 Ill. 2d at 504-05). We cannot substitute defendant's current argument that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence of aggravated kidnapping for his petition's argument that appellate counsel was ineffective for failing to consult with him and making a weak argument regarding the admissibility of Delaney's testimony. See *People v. Williams*, 2015 IL App (1st) 131359, ¶ 22. These arguments are not necessarily inconsistent, but they are different. See *Reed*, 2014 IL App (1st) 122610, ¶ 59. Accordingly, defendant's postconviction petition does not state a claim of ineffective assistance of appellate counsel premised on the alleged insufficiency of the evidence of aggravated kidnapping. Defendant has forfeited that claim on appeal. See 725 ILCS 5/122-3 (West 2020).

¶ 26                     B. Dismissal Pursuant to Section 122-2.1(a)(2)

¶ 27    Defendant also argues that the circuit court violated the Act by dismissing his petition in an oral ruling and without a written order. As an initial matter, this claim is not entirely accurate. On August 5, 2020, the circuit court signed a criminal disposition sheet stating that it had denied

defendant's *pro se* petition as being without merit and ordering the clerk to notify defendant of that ruling. Defendant's real complaint is that the circuit court did not issue a *memorandum* order detailing its findings of fact, conclusions of law, and reasoning. Section 122-2.1(a) of the Act, which governs first-stage proceedings, provides that "[w]ithin 90 days of after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon." 725 ILCS 5/122-2.1(a) (West 2020). "If the petitioner is sentenced to imprisonment and the court determines that the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying findings of fact and conclusions of law it made in reaching its decision." 725 ILCS 5/122-2.1(a)(2) (West 2020).

¶ 28    Our supreme court interpreted section 122-2.1(a)(2) in *People v. Porter*, 122 Ill. 2d 64 (1988). The court held that the word "shall" in section 122-2.1(a)(2) "does not refer to the contents of the court's order of dismissal itself," and is mandatory only as to "the court's duty to dismiss a petition if it is frivolous or patently without merit." *Porter*, 122 Ill. 2d at 81. The supreme court concluded that the absence of a written order setting out findings of fact and conclusions of law does not invalidate a petition's dismissal. *Id.* at 82. More recently, this court held that a "written order of summary dismissal is not required" so long as the dismissal "decision is entered of record," including sending it to the defendant. *Cooper*, 2015 IL App (1st) 132971, ¶ 14 (citing *People v. Perez*, 2014 IL 115927, ¶¶ 15, 29).

¶ 29    In this case, the circuit court dismissed defendant's petition on August 5, 2020, well within 90 days of the petition's filing on July 21, 2020. The dismissal is recorded in the report of proceedings for August 5, 2020, as well as the criminal disposition sheet for that date, which was signed by the postconviction judge. There appears to be no dispute that defendant was notified of

the court's ruling. Under *Porter* and *Cooper*, we find no reversible error in the procedures that the circuit court followed. The fact that the circuit court did not issue a detailed memorandum order is not a basis for us to reverse its decision. See *Porter*, 122 Ill. 2d at 82 (section 122-2.1(a) does not provide for the reversal or vacatur of a circuit court's dismissal order if the court fails to detail its findings); *Cooper*, 2015 IL App (1st) 132971, ¶¶ 9-10 (a summary dismissal is not void for lack of findings).

¶ 30    Defendant argues that our supreme court's decision in *Perez*, "super[s]eded" *Porter* and "render[ed] *Porter* a dead letter on the written-order requirement." We disagree for two reasons. First, *Perez* did not discuss or even mention *Porter*, so defendant's suggestion that *Perez* overruled *Porter* is incorrect. Second, the central issue of *Perez* was timeliness under the 90-day requirement; namely, whether a first-stage dismissal was timely where the circuit court singed a written dismissal order on the ninetieth day, but the clerk did not enter that order until the ninety-first day. *Id.* ¶ 1. Our supreme court concluded that the dismissal order was not entered when the circuit court signed it, but when the clerk entered it into the record, so the dismissal was untimely and was correctly reversed by the appellate court. *Id.* ¶ 29. The case before us does not involve the timeliness of the circuit court's dismissal of defendant's petition, so *Perez* offers little guidance. If anything, *Perez* supports a finding that the circuit court's summary dismissal in this case was valid because the court issued the dismissal order, and the clerk entered it into the record, well within the 90-day window.

¶ 31    We acknowledge that *Perez* suggests that *only* orally announcing the dismissal of a petition may not comply with section 122-2.1(a)(2). *Id.* ¶ 23. But that is not what occurred in this case. Rather, the circuit court stated its findings when it dismissed the petition on the record *and* the

dismissal was memorialized on the criminal disposition sheet. See *Cooper*, 2015 IL App (1st) 132971, ¶ 14 ("a written order of summary dismissal is not required," rather, "a court summarily dismisses a postconviction petition when its decision is entered of record," and a dismissal is "entered" on the date documented by the disposition sheet). Accordingly, we find that the circuit court's dismissal procedures did not violate section 122-2.1(a)(2) and there is no legal basis for us to reverse the dismissal of defendant's postconviction petition.

¶ 32                                    III. CONCLUSION

¶ 33     For the foregoing reasons, we find that defendant has forfeited his claim that counsel on direct appeal was ineffective for failing to challenge the sufficiency of the evidence of aggravated kidnapping, and we find that the circuit court did not violate the procedural requirements of section 122-2.1(a)(2) of the Act.

¶ 34     Affirmed.